**Ernest DRUCKER, Patricia Rogers, Philip Cherry and Ruth Cherry, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Nos. 1221, 1222 and 1223, Dockets 83–4004, 83–4005 and 83–4006.**

United States Court of Appeals, Second Circuit.

Argued May 2, 1983.

Decided Aug. 19, 1983.

Arthur Pelikow, New York City (Richard B. Sherman, New York City, on brief), for petitioners-appellants.

Stephen Gray, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D.C., on brief), for respondent-appellee.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City (I. Philip Sipser, Leonard Leibowitz, and Mary Jill Hanson, New York City, on brief), for amicus curiae Intern. Conference of Symphony and Opera Musicians, American Federation of Musicians.

Before KAUFMAN, VAN GRAAFEI-
LAND and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

An oft-repeated, perhaps apocryphal, sto-
ry tells of the musician who, when asked
the best way to get to Carnegie Hall, re-
plied, "Practice! Practice!" Whether the
story is truth or fiction, the fact remains
that, for a performing musician, practice is
not simply the best way to get to Carnegie
Hall, it is the only way. It is the only way
to get there, and it is the only way to
ensure that, having arrived, one stays there.
Ignace Paderewski, the famous pianist,
once said:

> If I don't practice for one day, I know
> it; if I don't practice for two days, the
> critics know it; if I don't practice for
> three days, the audience knows it.

Elyse Mach, *Great Pianists Speak For
Themselves* (Introduction by Sir Georg Solti
XIV) (1980).

Since a musician must practice, he must
have a place in which he can practice. This
appeal concerns the tax treatment of por-
tions of residential areas which are set aside
and used solely for such purpose.

Ernest Drucker, Patricia Rogers, and
Philip Cherry are concert musicians em-
ployed by the Metropolitan Opera Associa-
tion, Inc. (the Met). During the period
relevant to this appeal, each of them lived
in a New York City apartment in which one
room or a portion of a room was set aside
and used exclusively for musical study and
practice. Appellants spent approximately
thirty to thirty-two hours per week study-
ing and practicing in the areas reserved for
such use, and this appears to be about aver-
age for musical artists. *See, e.g.,* Mach,
*supra,* at 9, 14, 63. On their tax returns,
appellants deducted from gross income the
rent, electricity, and maintenance costs allo-
cable to the practice areas.

The Commissioner of Internal Revenue
disallowed these deductions and assessed
deficiencies against Drucker for the tax
years 1976 and 1977, against Rogers for
1977, and against the Cherrys, on their joint
return, for 1976. The taxpayers petitioned

the Tax Court for redetermination of the
deficiencies. With six judges dissenting,
the Tax Court first denied Drucker his
claimed deduction. *Drucker v. CIR,* 79 T.C.
605 (1982). The other two petitions then
were disposed of by memoranda on the au-
thority of the *Drucker* opinion. *Rogers v.
CIR,* 44 T.C.M. (CCH) 1312 (1982); *Cherry
v. CIR,* 44 T.C.M. (CCH) 1316 (1982). The
three cases are now before us on a consoli-
dated appeal. We reverse.

Section 280A(a) of the Internal Revenue
Code of 1954, as amended, 26 U.S.C.
§ 280A(a) (1976 & Supp. V 1981), generally
disallows any deduction for individuals
"with respect to the use of a dwelling unit
which is used by the taxpayer during the
taxable year as a residence." Section
280A(c)(1)(A), however, permits the deduc-
tion of the expenses "allocable to a portion
of the dwelling unit which is exclusively
used on a regular basis" as the "principal
place of business for any trade or business
of the taxpayer." In the case of an employ-
ee, the deduction is available "only if the
exclusive use . . . is for the convenience of
his employer." Section 280A(c)(5) contains
the further limitation that any deductions
must be limited to the excess of gross in-
come derived from such use for the taxable
year over those deductions allocable to such
use, such as mortgage interest, which are
permitted by the tax laws without refer-
ence to the business use concerned.

Unfortunately, terms such as "trade",
"business", and "principal place of business"
do not fit comfortably into a discussion of
the manner in which a professional musi-
cian earns his living. Harry Ellis Dickson,
a long-time member of the Boston Sympho-
ny Orchestra, wrote of his colleagues:

> A musician's life is different from that
> of most people. We don't go to an office
> every day, or to a factory, or a bank. We
> go to an empty hall. We don't deal in
> anything tangible, nor do we produce
> anything except sounds. We saw away,
> or blow, or pound for a few hours and
> then we go home. It is a strange way to
> make a living!

Dickson, *Gentlemen, More Dolce Please* (Preface) (1969).

█ It is indeed a "strange way to make a living", and we believe that the Tax Court failed to come to grips with that fact. Although the taxpayer musicians worked for portions of the tax years in question for employers other than the Met, the Tax Court held that they were in the "trade or business" of being Met employees. Applying its rule that the "focal point" of a taxpayer's activities determines his "principal place of business," *Baie v. CIR,* 74 T.C. 105, 109 (1980), the Tax Court held that appellant musicians' principal place of business was the same as that of their employer, *i.e.* Lincoln Center. In reaching this conclusion, the Tax Court majority made a number of findings which we are unable to reconcile. They said that, although individual practice by appellants was a necessity, and although appellants were expected to practice individually off the employer's premises because the Met did not provide facilities for such practice, off-premise practice was not "requested" by their employer and was not a "requirement" of employment. We are unable to comprehend how something can be "necessary" and "essential" and yet not be a "requirement". We do not understand how the Tax Court majority can say in one breath that "[a]s a professional musician [Drucker] · was required to practice numerous hours in order to maintain, refine, and perfect his skill" and to perfect his "parts ... prior to a rehearsal or performance", 79 T.C. at 607–08, while denying in a second breath that practice was a "condition of employment", 79 T.C. at 608. In short, we conclude that the Tax Court's finding that individual home practice was not a "requirement or condition of employment" was clearly erroneous and that it was this error which led the Tax Court to the equally erroneous holding that petitioners' principal place of business was at Lincoln Center.

█ We believe that appellant musicians' "principal place[s] of business" were their home practice studios. In so holding, we see no need to disturb the Tax Court's ruling that the taxpayers are in the business of being employees of the Met. Rath-er, we find this the rare situation in which an employee's principal place of business is not that of his employer. Both in time and in importance, home practice was the "focal point" of the appellant musicians' employment-related activities. *See Wisconsin Psychiatric Servs., Ltd. v. CIR,* 76 T.C. 839, 848–49 & n. 9 (1981); *Moller v. United States,* 553 F.Supp. 1071, 1078 (Ct.Cl.1982); *Hughes v. CIR,* 41 T.C.M. 1153, 1159 (1981). Less than half of appellants' working time was spent at Lincoln Center. The work they did perform there, *i.e.* rehearsals and performances, was made possible only by their solo practice at home. Moreover, the Met also performed in the City parks and on tour. The place of performance was immaterial so long as the musicians were prepared, and most of the preparation occurred at home. The home practice areas were appellants' principal places of business within the meaning of section 280A.

This holding is in accord with the legislative history of section 280A. Prior to the enactment of this section as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, § 601, courts sometimes allowed deductions for the business use of residences if such use was "appropriate and helpful" to the taxpayer's business. This construction of the law might permit an employee to take deductions for a home office even though his employer provided him with an adequate office at the employer's place of business. It also permitted business use deductions because of the performance of "appropriate and helpful" activities, "even though only minor incremental expenses were incurred in order to perform these activities." S.Rep. No. 938, 94th Cong., 2d Sess. 147, *reprinted in* 1976 U.S.Code Cong. & Ad. News 3439, 3580; H.R.Rep. No. 658, 94th Cong., 2d Sess. 160, *reprinted in* 1976 U.S. Code Cong. & Ad.News 2897, 3054; Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 94th Cong., 2d Sess. 139 (Comm.Print 1976), *reprinted in* 1976–3 C.B. (Vol.2) 1, 151. In enacting section 280A, Congress intended to provide clearer standards for deductions and to prevent the conversion of nondeductible personal, living, and family expenses into deductible business expenses. *Id.* The

changes were not directed at taxpayers such as appellants.

Because the Met provided appellants with no space for the essential task of private practice, the maintenance of residential space exclusively for such purpose was an expense almost entirely additional to nondeductible personal living expenses. The appellant musicians' use of home studios "was not 'purely a matter of personal convenience, comfort, or economy.' *Sharon v. Commissioner,* 66 T.C. 515, 523 (1976). Rather, it was a business necessity." *Gestrich v. CIR,* 74 T.C. 525, 530 (1980). As such, as a requirement of appellants' employment, home practice by appellants was for the "convenience of [their] employer", as the meaning of those words of art has developed over a period of time. *See CIR v. Kowalski,* 434 U.S. 77, 93, 98 S.Ct. 315, 324, 54 L.Ed.2d 252 (1977); *Adams v. United States,* 585 F.2d 1060, 1064–65 (Ct.Cl. 1978); *United States Junior Chamber of Commerce v. United States,* 334 F.2d 660, 663 (Ct.Cl.1964).

The judgments of the Tax Court are reversed and the matters are remanded for further proceedings in accordance with this opinion.