LARS E. HONAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Honan v. Commissioner
Docket No. 18452-81.
United States Tax Court
T.C. Memo 1984-253; 1984 Tax Ct. Memo LEXIS 425; 48 T.C.M. (CCH) 79; T.C.M. (RIA) 84253; May 8, 1984. *425 P, an airline pilot, was required by Federal regulation and by his employer to maintain, revise, and study various flight manuals, charts, and maps. His employer did not provide him with a place to do such work, so during 1977, he maintained a home office which he used for his study and revision. At the trial and over the Commissioner's objection, P claimed a deduction for telephone expenses in addition to those claimed on his return, but he never amended his petition to claim such expenses, although he was advised of the necessity of doing so. The Commissioner amended his answer to claim an increased deficiency with respect to an unreported capital gain. Held, P is not entitled to a deduction for the expenses attributable to his home office, since it was not his principal place of business. Sec. 280A(c)(1), I.R.C. 1954. Held, further, P's claimed deduction for additional telephone expenses was not properly before the Court. Rule 41(b) and (c), Tax Court Rules of Practice and Procedure.Held,further, the Commissioner's claim for the increased deficiency was not barred by the statute of limitations. Sec. 6214(a), I.R.C. *426 1954. David L. Frazier, for the petitioner. Richard *427 M. Duncan, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $4,466.00 in the petitioner's Federal income tax for 1977. After concessions by the parties, the issues remaining for decision are: (1) Whether, under section 280A of the Internal Revenue Code of 1954, [1] the petitioner is entitled to deduct expenses allocable to his home office; (2) whether the petitioner is entitled to deduct the additional telephone expenses that he claimed during the trial; and (3) whether the Commissioner's assessment and collection of an unreported long-term capital gain, which he first asserted in his amended answer, is barred by the statute to limitations. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Lars E. Honan, was a resident of Annapolis, Md., at the time he filed his petition in this case.He and his wife, June Honan, filed a joint Federal income tax return for 1977, which was received by the *428 Internal Revenue Service Center, Andover, Mass., on June 28, 1979. Mrs. Honan has not filed a petition with this Court and is not a party to this proceeding. Mr. Honan will be referred to as the petitioner. During 1977, the petitioner was employed by Eastern Airlines Incorporated (Eastern) as a co-pilot or first officer. During the second half of the year, he was based at LaGuardia airport in New York City, although he lived in Oakton, Va. The petitioner's work schedule was based on flight "sequences." Each sequence began and ended at the same airport and consisted of two or more flights. In between the individual flights of a sequence, the petitioner rested, sometimes overnight, in a city away from his LaGuardia airport home base. During 1977, the petitioner usually flew 3-day sequences with a total flying time of 18 to 20 hours each. He usually flew four such sequences per month, and he generally had 4 days off between sequences. The petitioner spent the time between sequences at his home in Oakton. During July 1977, the petitioner rented an apartment in New York City which he shared with others. He stayed at the apartment on those occasions when a sequence ended at *429 LaGuardia too late in the evening to permit him to return to Washington the same evening or when a sequence began too early in the morning for him to fly to New York the same morning. During 1977, Federal regulations and Eastern policies required that pilots be familiar with the contents of flight manuals, aircraft technical manuals, administrative manuals, charts, and maps. These documents contained information regarding air traffic patterns, airport approaches, "frequencies," "headings," "minimums," and technical information regarding the aircraft itself. All such materials were frequently revised, sometimes as often as several times a week, and pilots were required to keep current with the new materials and to revise their manuals as new information was issued. Generally, Eastern placed revisions and new materials in each pilot's mailbox at his home airport. In order to study the new materials and revise his manuals, the pilot needed access to the new revisions, the manuals, and a place to spread out the materials and to work. During a sequence, a pilot did not have access to the latest revisions, which were in his box at the home airport, and Federal regulations prohibited *430 a pilot from studying or revising his manuals while flying. Prior to leaving on a sequence, a pilot was expected to be familiar with all revisions to that date. Each pilot generally performed his study and revision in between his sequences in order to prepare for the next sequence. While Eastern had no express policy concerning the use of home offices for study and revision, the company did not furnish a place where a pilot could accomplish such task. In a basement room at his home in Oakton, the petitioner maintained an office in which he stored, revised, and studied his manuals, maps, and charts during 1977. The office occupied 149 square feet, approximately 8 percent of the floor space of the petitioner's house. Eastern required that the petitioner have a telephone at his house so that he could call in or be called in for flight duty. There was one phone line into the petitioner's house; one phone was located upstairs and the other in the basement office. The petitioner's office also contained a desk, chair, file cabinet, typewriter, lamp, bookcase, and calculator. During 1977, the petitioner was also engaged in activities on behalf of the Airline Pilots Association (the *431 union), of which he was a member. Eastern did not require its pilots to be union members. During 1977, the petitioner was the chairman of two union committees which dealt with airline security and the air transportation of hazardous materials. The two committees dealt extensively with officials of Eastern and of the Federal Aviation Administration and with others regarding union concerns in such areas. The committees met with various public and private officials in Miami, Atlanta, Washington, and New York. The petitioner engaged in union activities in his home office. The petitioner made a large number of long distance telephone calls during 1977. The majority of such calls were related to his union activity; some of them were related to his employment. During 1977, the petitioner was considering the purchase of condominiums in Colorado, Wyoming, Montana, Vermont, and New Hampshire. He also made phone calls to these locations in connection with his investigations. On his 1977 return, the petitioner deducted $480 with respect to the home office. He did not determine this amount based upon a percentage of his home expenses; rather, he determined that the fair rental value *432 of the office was $40 per month, or $480 per year. The petitioner also deducted $179 for telephone expenses for 1977. Such amount was attributable to calls that the petitioner made from the apartment in New York City. The petitioner received a Schedule K-1, Form 1065, from the Ogeechee Plantation Sportsman's Club Ltd., a partnership (Ogeechee Plantation), indicating that the petitioner's share of the partnership's long-term capital gain for 1977 was $709.50. The petitioner did not report any of the gain on his 1977 income tax return. [2]
*433 In his notice of deficiency, mailed on April 20, 1981, the Commissioner disallowed the petitioner's home office deduction. The Commissioner proposed no adjustment with respect to the capital gain or the deduction for telephone expenses. At the trial, the petitioner increased his home office deduction to reflect his claimed actual expenses, and he also claimed business telephone expenses in addition to those claimed on his return. The petitioner was given leave to amend his petition to claim the additional amounts, but no such amendment has been filed. At the trial, the Commissioner moved for and received leave to amend his answer to claim an increased deficiency arising from the unreported capital gain, and such amendment was filed. OPINION The first issue for decision is whether the petitioner is entitled to deduct the expenses allocable to his home office. Section 280A generally disallows deductions for expenses which arose from the individual taxpayer's use of a dwelling unit used by him as a residence. Sec. 280A(a). However, in the case of an employee, home office expenses *434 are deductible if the home office is exclusively used on a regular basis as the principal place of business [3] of the taxpayer and if such use is for the convenience of his employer. Sec. 280A(c)(1). The petitioner has the burden of proving that he is entitled to the deduction. Rule 142(a), Tax Court Rules of Practice and Procedure[4]; Welch v. Helvering,290 U.S. 111 (1933).
Section 280A was enacted in 1976. Sec. 601, Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1569. Prior to such enactment, this Court allowed a deduction for a home office when such home office was appropriate and helpful under the circumstances. Congress considered that such standard involved subjective determinations, led to administrative problems, and resulted in allowing *435 deductions for inherently personal expenses. Section 280A was enacted to provide definite rules for determining when a deduction is allowable for the business use of the home. See S. Rept. 94-938 (1976), 1976-3 (Vol. 3) C.B. 49, 185; Hynes v. Commissioner,74 T.C. 1266, 1296 (1980); Baie v. Commissioner,74 T.C. 105, 108 (1980). The petitioner contends that the home office constituted his "principal place of business." The Commissioner argues that the home office was not the petitioner's principal place of business and that the petitioner did not maintain the office for the convenience of Eastern, his employer. In determining whether a taxpayer's home office constitutes his principal place of business, we have examined the various locations in which the taxpayer conducted his business to ascertain which location was the "focal point" of the business activities. Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. at 109. The number of hours the taxpayer works at each location and the nature *436 of the trade or business are factors to be considered in the determination. See Drucker v. Commissioner,79 T.C. 605, 612 (1982), revd. 715 F.2d 67 (2d Cir. 1983). The petitioner argues that he was required by both Federal regulation and Eastern policy to update and study his manuals, charts, and maps, that this work could not be performed during a sequence, and that Eastern provided him no facilities for the performance of such responsibilities. The petitioner testified that he spent the better part of 3 days in study and preparation for a sequence and that he worked on his Eastern duties and union activities for 25 to 30 hours per week in the home office. For these reasons, the petitioner concludes that the home office was his principal place of business. We cannot agree. The petitioner was an airline pilot, and his principal responsibility was to fly ( airplanes from one place to another for Eastern. It was necessary that the petitioner prepare for these duties away from the premises of his employer, and his home office was appropriate and helpful to his preparation; nevertheless, such facts simply no longer suffice to render home office *437 expenses deductible. Sec. 280A. College professors, cancer researchers, gym teachers, nurses, hotdog vendors, and even judges [5] are often required to perform some work at home; yet, such requirements have not made their home offices the focal point of their employment activities. The petitioner's study and revision, while required for his effective performance, were incidental to his primary responsibilities which were performed elsewhere. Loughlin v. United States, an unreported case ( D. Minn. 1982, 82-2 U.S.T.C. par. 9543, 50 A.F.T.R. 2d 82-5827).
A contrary result is not mandated by the Second Circuit's reversal of our opinion in Drucker v. Commissioner,supra. That court found that "in time and in importance, home practice was the 'focal *438 point' of the appellant musicians' employment-related activities." 715 F.2d at 69. In our view, the petitioner's revision and study, necessary though such activities are, do not bear to his employment the same relation as the almost ceaseless practice of the concert musician bears to the latter's public performances. Moreover, we are not convinced that the petitioner's study and revision were so time-consuming as he would have us believe. The petitioner introduced the testimony of Captain Lloyd P. Anderson, who is director and chief pilot of the Washington and Baltimore base for Eastern. Captain Anderson testified that he usually spent 2-1/2 to 3 hours preparing for a 3-day sequence and that he had to study "more than the average." In light of such testimony, we find it difficult to fully credit the petitioner's estimate of the time that he spent preparing for a sequence, and we observe that his estimate of the time that he worked in the office each week (25 to 30 hours) included time spent on union activities. [6] We believe that the facts of the present case distinguish it from Drucker.[7] We conclude that the petitioner's home office was not his principal *439 place of business. Accordingly, section 280A(a) renders his home office expenses nondeductible, and we sustain the Commissioner's determination with respect to this issue. The second issue for decision is whether the petitioner may deduct telephone expenses in addition to those that he claimed on his return. At the trial, the petitioner introduced, over the Commissioner's objection, evidence regarding long distance telephone calls made from his home in Oakton, Va., for which he claimed a deduction. At such time, this Court advised the petitioner that he would have to amend his petition pursuant to Rule 41 to reflect his additional claims. The petitioner's counsel orally moved for and was granted leave to file such amendment. However, the *440 petitioner never filed his amendment; consequently, the claim for the additional deduction is not properly before us, and our decision must be limited to the assignments or error in the original petition. Rule 41(b)(2); Lysek v. Commissioner,583 F.2d 1088 (9th Cir. 1978), affg. a Memorandum Opinion of this Court; Halle v. Commissioner,7 T.C. 245, 248 (1946), affd. 175 F.2d 500 (2d Cir. 1949); M.C. Parrish & Co. v. Commissioner,3 T.C. 119, 129 (1944), affd. 147 F.2d 284 (5th Cir. 1945); see also In Re Santa Fe Downs, Inc.,611 F.2d 815, 817 (10th Cir. 1980); Joiner Systems, Inc. v. AVM Corp.,517 F.2d 45 (3d Cir. 1975); Big Four Oil & Gas Co. v. Commissioner,29 T.C. 31, 36 (1957). Accordingly, we may not consider the petitioner's claim for the additional telephone expenses. The third issue for decision is whether the Commissioner's assessment and collection of an unreported long-term capital gain, first asserted in his amended answer, is barred by the statute of limitations. The petitioner does not challenge the correctness of the Commissioner's *441 determination that his distributive share of the long-term capital gain received by Ogeechee Plantation during 1977 was $709.50; rather, he claims that the Commissioner's determination regarding the gain, first asserted in the amended answer, comes too late. The petitioner's 1977 return was received by the Internal Revenue Service Center, Andover, Mass., on June 28, 1979. The Commissioner mailed his notice of deficiency on April 20, 1981, well within the 3-year limitations period, and such mailing suspended the running of such period. Secs. 6503, 6213. However, the petitioner suggests that the timely mailing of a notice of deficiency for a taxable year suspends the running of the limitations period only as to the items with respect to such year which are contained in the notice. He contends that since the Commissioner's claim regarding the capital gain was not raised in the notice, the statute of limitations continued to run with respect to such claim. The petitioner's contention is groundless. The Commissioner may, at the trial, assert a claim for an increased deficiency for the year *442 at issue, even though at such time the statute of limitations would bar the assessment of the increased deficiency were the running of the limitations period not suspended. Sec. 6214(a); Teitelbaum v. Commissioner,346 F.2d 266, 267 (7th Cir. 1965), affg. a Memorandum Opinion of this Court; Ticker Publishing Co. v. Commissioner,46 B.T.A. 399, 414-415 (1942). Accordingly, the Commissioner's claim is timely, and we hold for the Commissioner on this issue. To reflect concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. The petitioner also deducted $10,190 for flight-training expenses, and the Commissioner disallowed the deduction in full. At trial, the Commissioner conceded that $2,191.67 of such amount was deductible, and the petitioner agreed that $405.03 of such amount was not deductible.Furthermore, regarding the remainder, $7,493.30, the parties agreed to be bound by the Ninth Circuit's disposition of the appeal in Manocchio v. Commissioner,78 T.C. 989 (1982), affd. 710 F.2d 1400↩ (9th Cir. 1983). Since the Ninth Circuit has affirmed the decision of this Court, the petitioner may not deduct the remainder of the flight-training expenses.
3. Sec. 280A↩ was amended by sec. 113(c), Black Lung Benefits Revenue Act of 1981, Pub. L. 97-119, 95 Stat. 1635. Prior to the amendment, subsection (c)(1)(A) read "(A) as the taxpayer's principal place of business." The subsection now reads "(A) [as] the principal place of business for any trade or business of the taxpayer." 4. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
5. See, respectively, Storzer v. Commissioner,T.C. Memo. 1982-328; Aab v. Commissioner,T.C. Memo. 1981-620; Kastin v. Commissioner,T.C. Memo. 1980-341; Wilhelm v. Commissioner,T.C. Memo. 1983- 274; Baie v. Commissioner,74 T.C. 105 (1980); Trussel v. Commissioner,T.C. Memo. 1982-680↩.
6. In light of our conclusion that the home office was not the petitioner's principal place of business, we need not decide whether his union activities rendered his business use of the office nonexclusive. Sec. 280A(c)↩. 7. Accordingly, we express no opinion concerning whether we will continue to adhere to our opinion in Drucker v. Commissioner,79 T.C. 605 (1982), revd. 715 F.2d 67↩ (2d Cir. 1983).