JOHN P. MURPHY AND IRENE MURPHY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murphy v. Commissioner
Docket No. 23561-84.
United States Tax Court
T.C. Memo 1986-491; 1986 Tax Ct. Memo LEXIS 119; 52 T.C.M. (CCH) 704; T.C.M. (RIA) 86491; September 29, 1986. Patrick J. Murphy, for the petitioners. Wendy Sands, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1981 in the amount of $1,502.00 and an addition to tax pursuant to section 6651(a)(1) *120 [1] in the amount of $75.10. The issues this Court must decide are (1) whether petitioner-husband's unreimbursed automobile expenses incurred in traveling between his home and job assignments in Manhattan are deductible under section 162(a), and (2) whether petitioners have substantiated costs of dry cleaning petitioner-wife's nurses uniforms. FINDINGS OF FACT Some of the facts have been stipulated and, except as noted below at footnote 3, are so found. Petitioners, John and Irene Murphy, are husband and wife who resided in Bedford Hills, New York at the time their petition was filed. In 1981, John worked as an automation examiner for the New York State Banking Department (the Banking Department). John's responsibility was to examine the electronic data processing functions of banking institutions subject to examination by the Banking Department. He traveled to banks in the New York City area and, at the banks' premises, would review printouts, inspect computer facilities, evaluate security procedures, examine machine logs and work with bank management and *121 staff to resolve observed problems. After completing an examination, John would prepare a written report of his examination. As a field examiner [2] John was not give office space in the Banking Department's Manhattan office. Since 1970 the Banking Department has designated filed examiners' homes as their "official work station" to which paychecks and office correspondence are mailed. John maintained workspace at a desk in his home at which he kept office memoranda, work papers, as many as 20 examination manuals provided by the Banking Department and other reference materials. He would sometimes transport the examination manuals to the location of his examination. John was not required to work at home. John received his assignments through his supervisor, George Angulo. Angulo estimated how long a particular examination should take and tried to allot enough time for the work to be completed at the site of the examination. He preferred that the examiners complete their reports on the job rather than at home and believed that he provided *122 sufficient time for them to do so. At his desk at home, John would fill out time sheets and occasionally complete reports if he was unable to do so at the bank he was examining. When John had finished an assignment, he would call the Banking Department to receive another. Typically, John would go to the Manhattan office of the Banking Department to pick up the materials he needed. On some occasions Angulo would ask another examiner to deliver the examination materials to the site of John's next examination. After completing an assignment John typically delivered his report to the Banking Department office or on occasion would mail it. John's examining region included New York City and outer lying areas (some as far away as Poughkeepsie, New York). The Banking Department reimbursed him for travel expenses for all of his assignments except those in Manhattan. During 1981 John spent 122 days in Manhattan conducting examinations at 10 banks. [3] He also spent 13 days attending classes at the Banking Department's office in Manhattan. John worked from 9:00 a.m. to 4:30 p.m. in the banks he examined. In 1981 he typically spent between one and three weeks at each Manhattan bank *123 he examined. John usually drove into Manhattan, in part because he had to carry numerous examination manuals. He knew the city well enough to find free street parking about 80 percent of the time. Otherwise, he left his car in a parking lot near the bank he was working in and paid about $5.00 per day for parking. John also incurred expenses for tolls when he drove into Manhattan. When his wife needed the car on when the car was being repaired, John took a commuter train and then a bus or subway to get to work. Because Banking Department policy was not to reimburse *124 examiners for travel expenses incurred in Manhattan, John did not file a request for reimbursement. Instead petitioners estimated John's automobile expenses in Manhattan and claimed a deduction of $3,284.00 four unreimbursed business expenses pursuant to section 162(a) on their 1981 joint income tax return. Irene is a registered nurse. In 1981 she worked as a head nurse at St. Johns Riverside Hospital in New York on a medical-surgical ward in which patients with communicable diseases were treated. Irene wore white uniforms to work. Of $510.000 claimed for the purchase and cleaning of these uniforms, respondent has conceded that petitioners can deduct $261.86 for purchase of uniforms. Irene worked with surgery patients and her uniforms frequently became soiled by bodily fluids. Petitioners claimed a deduction of $248.14 on their 1981 Federal income tax return for dry cleaning the uniforms. John claims to have paid $5.00 in cash to have, on the average, one uniform per week dry cleanded. Petitioners had no receipts to substantiate their claim. OPINION Petitioners claimed a deduction under section 162 for $3,284.00 in unreimbursed employee business expenses on their 1981 *125 income tax return. The deduction represents the cost of John's commuting approximately 14,400 miles, including tolls and parking, between petitioners' home in Bedford Hills, New York and Manhattan. Respondent disallowed the entire deduction, alleging that the travel expenses were non-deductible commuting costs. It is well established that the cost of commuting from a taxpayer's home to his job is a nondeductible personal expense. Commissioner v. Flowers,326 U.S. 465, 470 (1946); McCabe v. Commissioner,688 F.2d 102, 105 (2d Cir. 1982), affg. 76 T.C. 876 (1981), cert. denied 459 U.S. 906 (1982); Wisconsin Psychiatric Services, Ltd. v. Commissioner,76 T.C. 839, 849 (1981); section 1.162-2(e), Income Tax Regs.; section 1.262-1(b)(5), Income Tax Regs. The cost of travel between two places of employment, however, is deductible. Heuer v. Commissioner,32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). To deduct the cost of travel from a home office to another office a taxpayer must establish that the home office is his "principal office." Green v. Commissioner,59 T.C. 456, 459 (1972); *126 Wisconsin Psychiatric Services, Ltd. v. Commissioner,76 T.C. at 849. In determining whether a taxpayer's home is his principal office, this Court examines all of the taxpayer's work locations to ascertain which is the focal point of his business activities. Jackson v. Commissioner,76 T.C. 696, 700 (1981); Baie v. Commissioner,74 T.C. 105, 109 (1980). We find that John did not do any substantial amount of work at home. John maintained a desk in his home where he kept his manuals, reference materials and memoranda from the Banking Department, and performed some work related to his job. He worked at home to fill out time sheets and to complete reports when he was unable to do so at a bank, although he gave no indication of how frequently this occurred. His supervisor, George Angulo, provided John with adequate time to complete his assignments at his job sites.The Banking Department did not require examiners to work at home, and Angulo preferred that his examiners not work at home. Angulo could not recall any unusual pattern of behavior that would suggest that John completed his reports of examination at home rather than, in a *127 typical manner, at the site of the examination. John testified that he would mail in reports that he completed at home. Angulo testified that receiving reports from examiners in the mail would be an unusual pattern that he thought he would remember. Angulo could not recall receiving John's reports in the mail. While we believe that John did complete some reports at home and did mail them to Angulo, we do not believe that this work at home was frequent or usual. As we stated in Green v. Commissioner,59 T.C. at 459, "[t]he mere fact that petitioner for personal reasons voluntarily chose to do some of his employer's work at home did not convert his home to his first and last place of work * * *." The Banking Department's designation of field examiners' homes as their "official work stations" is not sufficient to transform petitioners' home into John's principal office, particularly given that examiners were not required to do any work at home. Further, John received his assignments at the Banking Department office in Manhattan, or they were delivered to him at the bank he was to examine. The banks petitioner examined were petitioner's principal place of business *128 and the focal point of his business activities. The expenses petitioner incurred in traveling between his home and banks in Manhattan were, therefore, personal, nondeductible commuting costs. Although recent decisions of the Second Circuit and the Seventh Circuit could be read to criticize the focal point test, those cases involved taxpayers whose work at home was necessary to the success of their business or professional achievement. See Meiers v. Commissioner,782 F.2d 75 (7th Cir. 1986), revg. a Memorandum Opinion of this Court; see also Weissman v. Commissioner,751 F.2d 512 (2d Cir. 1984), revg. a Memorandum Opinion of this Court, and Drucker v. Commissioner,715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982). In this case, John simply did not do any substantial amount of work at home. Unlike the college professor in Weissman, the professional musicians in Drucker or the Laundromat owners and operators in Meiers, John did not need to work at home, and he spent little time working there. Consequently, it is unnecessary to reconsider the merits of the focal point test in this case. Although commuting *129 costs are generally not deductible, the Supreme Court has stated that when a taxpayer must transport job-required materials to and from work, any additional costs attributable to transporting these materials are deductible. Fausner v. Commissioner,413 U.S. 838, 839 (1973); Coker v. Commissioner,487 F.2d 593 (2d Cir. 1973), cert. denied 414 U.S. 1130 (1974). We are not convinced on this record that John commuted by car because he had to transport bulky, work-related materials. His testimony was vague concerning what materials were required at his job location and how often he transported them. Angulo testified that materials needed at a particular examination could often be kept at the bank's premises and that transporting them back and forth between home and examination would often be unnecessary. Finally, even if John would not have commuted by car absent the need to transport his weighty manuals, he offered no proof on what additional costs he might have incurred that were attributable to transporting his manuals. The remaining issue concerns the validity of petitioners' claimed deduction for dry cleaning Irene's uniforms.John *130 claims that he paid approximately $5 per week in cash for dry cleaning uniforms but could produce no receipts to substantiate his claim. The sole evidence of the expenditures was John's testimony. In Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), the Second Circuit held that the Board of Tax Appeals could not arbitrarily deny any deduction for expenses that it found had actually been incurred because it was impossible to determine the exact amount spent. There must, however, be evidence that the expense was incurred.See Rodman v. Commissioner,542 F.2d 845, 853 (2d Cir. 1976). We found John's testimony to be credible and unimpeached, and we believe that he did incur some expense in dry cleaning Irene's uniforms. While some uniforms could not have been dry cleaned because of the nature of the stains, John claims to have dry cleaned one uniform per week which seems reasonable. We, therefore, hold that petitioners are entitled to deduct dry cleaning costs for Irene's uniforms in the claimed amount of $248.14. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue.↩
2. The Banking Department also employed office examiners who worked in the Department offices and did not conduct on-site examinations.↩
3. The parties stipulated that John worked 133 days in Manhattan in 1981 (not including 13 days spent attending classes). The stipulation is incorrect in two respects: (1) the Attendance Records and Institutional Billing Sheets show that John worked at Manufacturers Hanover Bank on October 1 and 2, 1981, but these dates are omitted from the stipulation; (2) 13 days on which John worked at European American Bank, are treated as days worked in Manhattan, but this bank is located in Westbury, NY, not Manhattan (and the parties properly omitted this bank from the list of banks in paragraph 10 of the stipulation).↩