LOUIS A. AND MERRIDAWN BROWNING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Browning v. Commissioner
Docket No. 33687-84.
United States Tax Court
T.C. Memo 1988-293; 1988 Tax Ct. Memo LEXIS 321; 55 T.C.M. (CCH) 1232; T.C.M. (RIA) 88293; July 6, 1988. Burgess L. Doan and Marvin L. Martin, for the petitioners. Ronald T. Jordan, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION
*323 HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes of $ 4,125 and $ 4,252 in taxable years ending December 31, 1980 and December 31, 1981, respectively. The issues for decision are: (1) whether petitioners are entitled to claim depreciation deductions under section 167[1] for taxable years 1980 and 1981 with respect to a Stradivarius violin and a Ruggeri violin; (2) whether petitioners are entitled to claim a depreciation deduction under section 168 respect to a Gabbrielli violin in taxable year 1981; (3) whether petitioners are entitled to an investment tax credit on the Gabbrielli violin purchased in 1981; and (4) whether petitioners are entitled to a deduction in taxable year 1980 for expenses related to a music practice room located in their residence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, the supplemental stipulation of facts and attached exhibits are incorporated *324 herein by this reference. [2]
Petitioners resided in Portland, Oregon, when they filed their petition in this case. During the taxable years in issue, petitioner Louis Browning was a musician. [3] He performed in a variety of settings such as nightclubs, bars and private engagements. Prior to and during the taxable years in issue, petitioner purchased several instruments, most notably three violins each made by a renowned violin craftsman. In 1978, petitioner purchased a Ruggeri violin at a cost of $ 24,000. The violin carries a Rembert Wuzlitzer, Inc. certificate which certifies that the violin was made in Cremona, Italy by violin maker Francesca Ruggeri in 1675. On March 19, 1979, petitioner purchased a Stradivarius violin for $ 130,000. Accompanying the Stradivarius violin was a Dario D'Attili certificate of origin certifying that, with the exception of the scroll, the violin was made by Antonio Stradivarius in Cremona, Italy in 1736. On December 3, 1981, petitioner purchased a *325 Gabbrielli violin for $ 27,000. A prestigious William E. Hill & Sons certificate acknowledges that this violin was made by Joannes Battista Gabbrielli of Florence, Italy in 1779. During taxable year 1980, petitioner utilized one room of his six-room home exclusively for practicing music. He stored his musical instruments in a closet in this room. During 1980, petitioner sustained and paid expenses of $ 400 in connection with this room. [4] Petitioner did not maintain an office elsewhere during taxable year 1980. During the taxable years in issue, petitioner deducted depreciation expense for his musical instruments under the straight line method as follows: Depre-
Depre-
Date
ciation
ciation
Item
Acquired
Cost
Life
1980
1981
Violins
1977
$      975
8
$     122
$     122
Ruggeri
19978
24,000
12
2,000
2,000
Violin
Schuback
1978
6,000
12
500
500
Violin
Guitar &
7/1/79
2,290
8
286
286
Amplifier
Fiddle &
7/1/79
700
5
140
140
Guitar
Stradivarius
7/1/79
131,200
12
10,933
10,933
Hill Violin
1981
2,100
5
--
210
Bow
Microphone
1981
360
3
--
60
Total
$ 13,981
$ 14,251
*326 Additionally, on Schedule C of their 1980 Form 1040 return, petitioners deducted $ 400 for office space expense. On August 14, 1984, respondent issued a notice of deficiency denying petitioners the depreciation deductions on the Ruggeri and Stradivarius violins, and the deduction with respect to petitioner's music practice room. Petitioners did not claim depreciation on the Gabbrielli violin purchased during taxable year 1981 on their 1981 Form 1040 return. On January 28, 1986, this Court granted petitioners' motion for leave to amend their petition. In their amended petition filed January 28, 1986, petitioners asserted their right to claim depreciation under section 168 and an investment tax credit in taxable year 1981 on the Gabbrielli violin. By amended answer filed February 18, 1986, respondent denies petitioners' claim. Both petitioners and respondent lodged expert reports concerning the value of petitioner's Stradivarius violin. More particularly, the reports focused on the value of the Stradivarius in 1992, the end of its alleged useful life of 12 years. Petitioners' expert, Paul Schuback ["Schuback"], is the principal in the Paul Schuback Violin Shop, Inc. *327 in Portland, Oregon. [5] After years of technical training, Schuback is a Master violin-maker. Additionally, Schuback buys and sells fine musical instruments, including Stradivarius violins. Schuback appraises, repairs, and restores fine musical instruments on a regular basis. Schuback sold petitioner his Stradivarius and Gabbrielli violins. Schuback examines several factors in his evaluation of a musical instrument. First, Schuback ascertains the violin's original maker and the date and location of its construction. Second, Schuback evaluates the violin's present condition and tonal quality. Third, Schuback determines the ownership of the violin over the years. If an instrument was owned during its history by a celebrated soloist, the instrument retains a high value as a collectors' piece. Additionally, Schuback inspects the instrument for replacement parts. After an examination of petitioner's Stradivarius violin, Schuback found that petitioner's Stradivarius had already deteriorated *328 and will possibly continue to loose [sic] value over the next several years, due to extreme playing conditions, and stress the instrument is subjected to.
Schuback concluded his report by stating It appears to be impossible to speculate appreciation of any musical instrument due to the many coefficients involved. For example, international monitary [sic] currency changes, marketability, sound trends, available financing to musicians, and supply and demand of fine quality instruments. [Emphasis supplied.] On June 15, 1983, Schuback provided petitioner with an insurance appraisal of his Stradivarius violin to which Schuback attached a cover letter which read, in pertinent part: In March 1979, I sold a Stradivarius violin to Louis A. Browning. Although the violin is a beautiful instrument, it is not a prime specimen of a Stradivarius, since the head is not the original head, and the face is marred. If a violin is used, as opposed to being put in a museum, it is subject to deterioration through ordinary wear and tear. After a period of use, normally 10 to 15 years, the violin will cease the richness of sound required by a professional musician. At that point, *329 it becomes worth less as a musical instrument. * * * Mr. Browning told me he intended to use the violin for both professional perfromance [sic] and as a collectible. The market value for true, prime Stradivarius violins is relatively strong at the present time, with such specimens worth in the neighborhood of $ 1.2 million. However, the secondary market for imperfect Stradivarius violins always has been and continues to be extremely speculative and unsure. It is entirely possible that Mr. Browning could not find a person willing to buy his violin as a collectible at any given time. Of course, so long as the violin retains its musical attributes, it can be sold to other musicians. However, as I described above, these attributes are being constantly eroded by day-to-day use. [Emphasis supplied.]
In 1984, Schuback valued petitioner's Stradivarius for insurance purposes at $ 225,000. Respondent's expert witness, Wiley C. Grant, ("Grant") is presently a Senior Appraiser for the Internal Revenue Service. [6] In his valuation report, Grant determined the 1992 fair market value of petitioner's Stradivarius violin. Unlike Schuback's report, Grant centered his valuation *330 inquiry on recent sales of Stradivarius violins primarily by auction houses such as Christie's and Sotheby's. With present-day sales of Stradivarius violins ranging from $ 36,741 to $ 308,000, Grant focused in particular on two recent sales of Stradivarius violins which Grant believed were comparable to petitioner's Stradivarius. First, in January 18, 1984, Christie's New York sold the Lyall Stradivarius violin for $ 231,000. The Lyall Stradivarius carries a William E. Hill and Sons certificate stating that the violin was an authentic Stradivarius violin made in Cremona, Italy, in 1702 with the exception of its head. The 19th century violin craftsman Joseph Rocca created the violin's head. Second, Grant notes the November 20, 1984, sale of a 1720 Stradivarius whose front was constructed by Thomas Dodd and the head built by the Elder Chanot. [7] *331 This Stradivarius violin sold for $ 36,741. [8]
Grant concludes that through these examples it is clear that Stradivarius violins and partial Stradivarius violins are sold on a regular basis by auction houses and command "work of art" prices. Due to the limited supply of Stradivarius violins, Grant asserts that collectors who have never played a violin will pay high prices for Stradivarius even though it may be badly worn, damaged or repaired. On the basis of the recent sales of Stradivarius violins by auction houses, Grant determined that petitioner's Stradivarius would appreciate rather than depreciate in value for each year of ownership. Applying a discount rate based on inflation, and the upward trend in the market, Grant concluded that petitioner's Stradivarius violin would be worth $ 275,000 in 1992. No expert reports were received concerning petitioner's Ruggeri and Gabbrielli violins. OPINION The first issue for determination is whether petitioners are entitled to claim *332 depreciation deductions under section 167 for taxable years 1980 and 1981 with respect to the Stradivarius violin and a Ruggeri violin. Petitioners contend that the Stradivarius violin has a zero salvage value at the end of its alleged 12-year useful life. Petitioners submit that respondent's 12-year useful life guideline set forth in Rev. Proc. 77-10, 1977-1 C.B. 548, was the best information on depreciation available to petitioners and that they were entitled to rely upon it in estimating useful life and salvage value. [9] On the other hand, respondent asserts that if the expected salvage value of an asset is equal to or greater than the cost of the asset to the taxpayer, no depreciation may be claimed. In this regard, respondent contends that there is no evidence in the record which would support petitioners' contention that these two antique Italian violins would be worthless at the end of their claimed useful lives of 12 years. *333 Section 167 provides, in pertinent part: (a) GENERAL RULE. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, * * *
In order to deduce depreciation expense for an asset used in trade or business or for the production of income, a taxpayer must establish three essential facts: (1) the depreciable basis of the property, section 167(g); [10] (2) the useful life of the property, section 1.167(a)-1(b), Income Tax Regs.; [11] and (3) a reasonable estimate of salvage value. Section 1.167(a)-1(c), Income Tax Regs.[12] All of the above elements must be established in order to show that a deduction for depreciation is allowable. Petitioners bear the burden of proof to establish these facts. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a). Respondent concedes that petitioners have *334 shown the depreciable basis of the Stradivarius and Ruggeri violins. However, respondent asserts that petitioners have failed to meet their burden of proof with respect to useful life and salvage value. We agree with respondent. *335 As the parties have concentrated their efforts in disputing the salvage value of the Stradivarius violin, we will begin our examination of petitioner's evidence there. Because the taxpayer must determine the salvage value of property at the time the property is placed into service, the taxpayer's determination is an estimation only. Massey Motors v. United States,364 U.S. 92, 104 (1960); sec. 1.167(a)-1(c)(1), Income Tax Regs. Although there is always the risk that a mistake will be made in the estimation, "prediction is the very essence of depreciation accounting." Massey Motors v. United States, supra at 105. However, allowing the taxpayer to predict a value as of a date in the future does not grant the taxpayer a license to do so in an arbitrary and unreasonable manner. "[I]t is the primary purpose of depreciation accounting to further the integrity of periodic income statements by making a meaningful allocation of the cost entailed in the use * * * of the asset to the periods to which it contributes * * * Obviously *336 a meaning annual accrual requires an accurate estimation of how much the depreciation will total. The failure to take into account a known estimate of salvage value prevents this." Massey Motors v. United States, supra at 104. After an examination of the record in this case, we hold that petitioners' determination that the Stradivarius violin's salvage value would be zero in 1992 was arbitrary and unreasonable. We cannot discern that petitioners utilized any reasonable efforts to arrive at an accurate calculation of salvage value. In particular, with regard to Schuback's testimony and expert report, we find a complete failure to establish a salvage value for petitioner's Stradivarius in any amount at any point in time. Schuback testified generally and concluded that, while the tonal quality of the violin would deteriorate in 10 to 15 years, it was in essence impossible to place a salvage value on this instrument on anything but the most speculative basis. Schuback would not commit to a specific figure for a reasonably estimated salvage value nor would he state that petitioner's Stradivarius had a zero salvage value. However, for insurance purposes, Schuback *337 appraised petitioner's Stradivarius violin at $ 225,000 in 1984. [13] Schuback was petitioner's sole witness. Other than Schuback's expert testimony and expert report, petitioner has presented us with little evidence. Although we are not convinced of the accuracy of Grant's discount rate method of determining the 1992 salvage value of petitioner's Stradivarius, we are persuaded, in the absence of any concrete evidence from petitioner, that petitioner's Stradivarius violin could not have a salvage value of zero in 1992. Under these circumstances, we hold for respondent. *338 Assuming arguendo that petitioner could prove a salvage value so as to fall within the purview of Section 167, we further find that petitioners did not demonstrate that these violins were limited to a useful life of 12 years. The useful life of an asset is the period over which the asset may reasonably be expected to be useful to a taxpayer in his trade or business. Section 1.167(a)-1(b), Income Tax Regs. The useful life of an asset is determined when the asset is placed in service, based upon the taxpayer's past experience with similar assets or the experience of the industry as a whole. Section 1.167(a)-1(b), Income Tax Regs.; Dinkins v. Commissioner,45 T.C. 593 (1966), affd. 378 F.2d 825 (8th Cir. 1967). The useful life of an asset must be objectively related to the period to which it may reasonably be expected to be employed in the taxpayer's business, and not upon the subjected intentions of the taxpayer. Massey Motors v. United States,364 U.S. 92 (1960). Petitioner *339 concedes that he had no actual past experience with similar assets but looked to the industry as a whole in his estimation of both useful life and salvage value. However, the record does not show what industry criteria caused petitioner to estimate a useful life of twelve years or a zero salvage value for his Stradivarius violin. Further, petitioner admits that Schuback did not advise petitioner on useful life and salvage value for depreciation purposes. Petitioner states that he consulted counsel and relied on Rev. Proc. 77-10, 1977-1 C.B. 548. [14]
In Rev. Proc. 77-10, petitioners point to the ADR upper limit of 12 years for recreation assets as evidence of the Stradivarius' useful life. In this respect, Rev. Proc. 77-10, 1977-1 C.B. 548, 567 provides a description of the assets included in this category: Recreation: Includes assets used in the provision of entertainment *340 services on payment of a fee or admission charge, as in the operation of bowling alleys, billiard and pool establishments, theaters, concert halls, and miniature golf courses. Does not include amusement and theme parks and assets which consist primarily of specialized land improvements or structures, such as gold courses, sports stadia, race tracks, ski slopes, and buildings which house the assets used in entertainment services. Revenue Rulings and Revenue Procedures are not binding on this Court. [15]Estate of Lang v. Commissioner,64 T.C. 404, 406-407 (1975), affd. in part 613 F.2d 770 (9th Cir. 1980). It is difficult to conceive that violins over 200 years old have useful lives of twelve years and fall within *341 the "Recreation" category of Rev. Proc. 77-10. Moreover, petitioner has failed to provide any reliable evidence to meet his burden of proof to establish a useful depreciable life for either his Stradivarius or Ruggeri violin. Neither petitioner testified in this case and the record does not contain sufficient stipulated facts for us to answer some important questions. [16]
Of key importance is the amount of time petitioner actually played the Stradivarius. Schuback attended some of petitioner's performances. Schuback stated that petitioner played the Stradivarius at performances on *342 several occasions but Schuback did not know how many times petitioner used the Stradivarius. Given Schuback's testimony that performance use of the Stradivarius will cause deterioration, it is important to know how much petitioner actually played the violin. While we found Schuback's testimony generally credible, we cannot find as a fact that petitioner frequently used the Stradivarius in his performances. In fact, from the record, we have no definite answer as to how often the three antique violins were used, if ever. Even if the Stradivarius lost some or all of its tonal value, it is probable that it would retain substantial value as a antique collectible. In fact, we suspect that petitioner was forming a collection of antique violins not only as musical tools of the trade but as antique collectibles. In light of the testimony before us, we must sustain respondent's determination with respect to petitioner's Stradivarius violin. Petitioners presented no evidence on the Ruggeri and Gabbrielli violins except to state that the same principles which Schuback applied to the Stradivarius violin applied to the Ruggeri and Gabbrielli violins. As petitioners bear the burden of proving *343 their entitlement to depreciation deductions for the Ruggeri and Gabbrielli violin, Rule 142 (a), we must sustain respondent on this issue. Petitioners assert that they are entitled to an investment tax credit on the Gabbrielli violin in taxable year 1981. In general, an investment tax credit is permitted on "property with respect to which depreciation * * * is allowable and having a useful life * * * of three years or more." Sec. 48(a)(1). Depreciation is allowable only for property used in the trade or business or held for the production of income. Sec. 167(a). Petitioners have not given the Court any evidence concerning the percentage of petitioner's business use of the Gabbrielli violin. As a result, no investment tax credit is allowable with respect to the Gabbrielli violin in taxable year 1981. Finally, petitioners contend that in 1980, they are entitled to a $ 400 deduction for office space which was a portion of their residence. Petitioners have the burden of proving that they are entitled to this deduction. Rule 142(a). *344 Section 280A(a) provides that no deduction shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable years as his residence. However, section 280A(c)(1) carves out certain exceptions to this general rule of nondeductibility. Petitioners rely upon the exception in section 280A(c)(1)(A). That section provides that the general rule of nondeductibility shall not apply to "any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer." (Emphasis supplied.) We conclude that petitioners have not met their burden of proof. Petitioners did not testify at trial and presented no evidence concerning the number of hours the room was utilized or the nature of the practice sessions. Thus, we cannot determine if the room was used on a regular basis for practice. [17] As a result, we must hold for respondent on this issue. *345 We have considered petitioners' other arguments and find them to be without merit. Based on the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. On February 11, 1986, the supplemental stipulation of facts was read into the record at trial. ↩
3. The term "petitioner" shall hereinafter refer to petitioner Louis A. Browning. ↩
4. The record does not disclose what this $ 400 expense represents. ↩
5. Schuback also owns the Amati Shop, Inc. in Houston, Texas. He is a member of The American Federation of Violin and Bow Makers, The International Entente, and the Violin Society of America. ↩
6. Grant commenced his career as a cultural property appraiser in 1973. He serves as Chairman of respondent's Print Advisory Panel and collaborates professionally with respondent's Art Advisory Panel. In his position as Senior Appraiser, he has reviewed appraisals of valuable musical instruments including Stradivarius cellos. ↩
7. Both Thomas Dodd and the Elder Chanot are historic violinmakers. ↩
8. In his original report, Grant reported this sale as $ 52,000. He corrected his error in writing and through testimony. ↩
9. In their petition, petitioners asserted that respondent's determination in the notice of deficiency was arbitrary, capricious and discriminatory. In general, respondent's determination of a deficiency in tax is presumptively correct and petitioners bear the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 114 (1933); Rule 142(a). Where however, it is demonstrated that the statutory notice of deficiency is arbitrary and excessive, the presumption of correctness evaporates and the burden of going forward with evidence supporting the determination of deficiency shifts to respondent. Helvering v. Taylor,293 U.S. 507 (1935); Dellacroce v. Commissioner,83 T.C. 269, 280, 287 (1984). With certain limited exceptions, the Court will not look behind the notice of deficiency to examine the evidence used, the propriety of respondent's motives, the administrative policy or procedure followed by respondent in the determination of the statutory notice of deficiency. Dellacroce v. Commissioner, supra;Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). Our determination of a taxpayer's tax liability is based on the merits of the case as presented and is not based on the administrative record. Greenberg's Express, Inc. v. Commissioner, supra.This case does not fall outside the general rule of Greenberg's Express Inc.↩ and we find that respondent's determinations within the statutory notice of deficiency were not arbitrary, capricious or discriminatory. 10. Section 167(g) provides: (g) Basis for depreciation. - The bases on which exhaustion, wear and tear and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property. ↩
11. Sec. 1.167(a)-1(b), Income Tax Regs., provides: (b) Useful life. For the purpose of section 167↩ the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments with the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. * * * 12. Sec. 1.167(a)-1(c), Income Tax Regs., provides: (c) Salvage. (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. * * * The time at which an asset is retired from service may vary according to the policy of the taxpayer. If the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large portion of the original basis of the asset. However, if the taxpayer customarily uses an asset until its inherent useful life has been substantially exhausted, salvage value may represent no more than the junk value. Salvage value must be taken into account in determining the depreciation deduction either by a reduction of the amount subject to depreciation or by a reduction in the rate of depreciation, but in no event shall an asset (or an account) be depreciated below a reasonable salvage value. * * * ↩
13. Petitioners object to the admission of the insurance appraisals on grounds of relevancy. Rule 401, Federal Rules of Evidence, applicable in the Court pursuant to Rule 143, and sec. 7453, defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Armco, Inc. v. Commissioner,87 T.C. 865, 867 (1986). Upon reviewing the insurance appraisals, we find these documents contain facts which are relevant and material within the meaning of Rule 401, Federal Rules of Evidence.↩Thus, petitioners' objection is overruled and the evidence is made a part of this record. 14. This statement contradicts petitioners' claims in the original brief that "petitioner made his determination as to salvage value with the benefit of discussion with Mr. Schuback at the time of acquisition as to conditions and expectations of the violins at issue." ↩
15. A Revenue Procedure is used to promulgate rules of a procedural nature. Like Revenue Rulings, Revenue Procedures are "statements of general policy or interpretation formulated and adopted by the agency for guidance of the public." See H. Rept. No. 1980, 79th Cong., 2d Sess. 19 (1946); S. Doc. No. 248, 79th Cong., 2d Sess. 253 (1946). ↩
16. We note that we cannot assume that the testimony of a critical absentee witness would have been favorable. Indeed, the normal inference is that it would have been unfavorable. Pollack v. Commissioner,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968). See also Tokarski v. Commissioner,87 T.C. 74, 77 (1986); Bresler v. Commissioner,65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947). 17. We recognize that in Drucker v. Commissioner,715 F.2d 67 (2d Cir. 1983), the Court of Appeals for the Second Circuit allowed certain musicians to deduct the cost of practice areas in their homes. See also Meiers v. Commissioner,782 F.2d 75 (7th Cir. 1986); Weissman v. Commissioner,751 F.2d 512 (2d Cir. 1984). However, the court based that allowance on its finding that "Both in time and in importance, home practice was the 'focal point' of the appellant musicians' employment-related activities." 715 F.2d at 69. Here, we cannot make that determination due to the lack of evidence. Therefore, applying the Drucker↩ test does not change our determination.