W. CORDELL CLINGER and SHAUNA C. CLINGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clinger v. Commissioner
Docket No. 20008-88
United States Tax Court
T.C. Memo 1990-459; 1990 Tax Ct. Memo LEXIS 504; 60 T.C.M. (CCH) 598; T.C.M. (RIA) 90459; August 27, 1990, Filed *504 Decision will be entered for the respondent. P studied art under Alvin Gittins, a well-known portrait artist in the Intermountain area. In 1984, she purchased one of his paintings which she placed in her studio. P believed the painting would provide her with an educational benefit (i.e., she could study the painting to further perfect her skills) and would promote the sale of her own paintings. Held: 1. The enactment of the accelerated cost recovery system (ACRS) under the Economic Recovery Tax Act of 1981 did not abolish the requirement that an asset have a determinable useful life in order to be depreciable. 2. Respondent's disallowances of ACRS deductions, investment tax credit, and section 179 expense deduction with respect to the painting are sustained. John J. Borsos, for the petitioners. Joel A. Lopata, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes for the years 1984 and 1985 in the amounts of $ 1,524.24 and $ 471.70, respectively. The issue for decision concerns petitioners' *507 entitlement to a depreciation deduction, an investment tax credit, and a deduction under section 179[1] with respect to the purchase of an oil painting in 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by reference. W. Cordell Clinger and Shauna C. Clinger, husband and wife, resided in Salt Lake City, Utah, at the time they filed their petition. They filed joint Federal income tax returns for 1984 and 1985. References to "petitioner" in the singular are to Shauna C. Clinger. Petitioner is a professional portrait artist and has a studio in Salt Lake City. She studied art at the University of Utah; one of her instructors was Alvin Gittins (Gittins), a well-known portrait artist in the Intermountain area. *508 At the time of trial, petitioner had been painting professionally for 15 years. Because of her expertise in portrait painting, she felt that Gittins' paintings were the standard against which her work would be evaluated. She believed that she could establish her credentials and facilitate the marketing of her paintings by purchasing a Gittins painting and placing it in her studio where potential customers could view it along with her paintings. She also believed that a Gittins painting would provide her with an educational benefit, i.e., she could study the painting to further perfect her artistic skills. In 1984, petitioner purchased a Gittins oil painting, entitled "Ethnic Study," from the deceased artist's estate for $ 9,000. She hung the painting in the front room of her studio, where it has remained for approximately 5 years. Petitioner has no present intention of moving the painting from her studio and plans to continue painting throughout her lifetime. On their 1984 Federal income tax return, petitioners claimed an ACRS deduction, an investment tax credit, and a section 179 expense deduction with respect to the purchased painting, which respondent disallowed. On their *509 1985 Federal income tax return, petitioners claimed an ACRS deduction with respect to the painting, which respondent disallowed. OPINION Prior to the Economic Recovery Tax Act of 1981 (ERTA), Pub.L. 97-34, 95 Stat. 172, as a general rule, property was depreciable if it was (1) used in a trade or business or held for the production of income, and (2) subject to wear and tear, decay or decline from natural causes, exhaustion or obsolescence. In addition, the concepts of useful life and salvage value played a prominent role in the eligibility of a depreciation deduction. To be entitled to a deduction for depreciation, the property in question had to have a determinable useful life. The amount of depreciation, in total, was limited to the cost or other basis of the property less a reasonable estimate for salvage value. Prior to ERTA, the principal method used to determine useful lives for personal property was the Asset Depreciation Range (ADR) system. Under the ADR system assets were grouped into classes and a guideline life was determined for each class. Taxpayers were permitted to use a useful life of up to 20 percent longer or shorter than the guideline life established under *510 the ADR system. For assets not eligible for ADR treatment and for taxpayers who did not elect to utilize ADR, useful lives generally were determined on a facts and circumstances basis. With the enactment of ACRS under ERTA, Congress overhauled the then existing depreciation regime in an effort to provide investment stimulus for economic expansion and to remove existing complexities. S. Rept. 97-144 (1981). ACRS provides for the recovery of capital costs for most tangible depreciable property by utilizing accelerated methods of cost recovery over one of various separate recovery periods depending upon the type of property. The amount of the ACRS deduction is determined by applying a statutory percentage to the original cost of an asset. Respondent cites in his brief several of our memorandum decisions in which the taxpayer was denied a depreciation deduction for artwork on the basis that the taxpayer failed to prove the artwork's useful life. [2] Petitioners assert that the cases relied upon by respondent are distinguishable in that they involve pre-ERTA law and argue that with the enactment of ACRS, the concepts of useful life and salvage value no longer have any role in determining *511 whether property is depreciable. Although we agree with petitioners that the concept of salvage value has been eliminated with the enactment of ACRS under ERTA, we disagree that useful life considerations have been entirely eliminated. Section 168(a) provides for a deduction with respect to recovery property. In general, recovery property is defined as tangible property of a character subject to the allowance for depreciation which is used in a trade or business or held for the production of income. Sec. 168(c). The cost of an eligible asset is recovered over a predetermined recovery period based upon the class of *512 recovery property into which the asset falls. The classes of recovery property, i.e., 3-year property, 5-year property, etc., make reference to "present class lives," a term borrowed from the ADR system. Sec. 168(c)(2). Thus, the ADR system of pre-ERTA law provides a basis for determining the applicable recovery period under ACRS. ACRS eliminated the concept of salvage value by permitting the entire cost of an asset to be recovered. Sec. 168(b). Petitioners likewise posit that the concept of useful life has been eliminated. The legislative history to ERTA provides some guidance in this regard. In explaining the reasons for the change in law, the portion of the Senate Report discussing ACRS provides: The committee believes that a new capital cost recovery system should be structured which de-emphasizes the concept of useful life, minimizes the number of elections and exceptions, and so is easier to comply with and to administer. S. Rept. 97-144, supra at 47. While we acknowledge that the concept of useful life may have been deemphasized by the enactment of ERTA, we *513 reject petitioner's contention that it was altogether eliminated. Congress achieved simplification of the depreciation system by supplanting the ADR system with predetermined recovery periods based upon defined classes of property. In defining recovery property, section 168(c) refers to an "allowance for depreciation." Additionally, various classes of recovery property are defined by reference to the ADR system. Admittedly, the predetermined recovery periods under ACRS are generally shorter than the economic useful lives under the pre-ACRS regime. However, this is consistent with Congress' goal of providing incentives to fuel economic expansion rather than a wholesale abandonment of the useful life requirement. Accordingly, it is our opinion that the concept of useful life was not eliminated by the enactment of ACRS under ERTA; hence, where respondent has determined that a taxpayer's assets have no determinable useful life and consequently are not depreciable, petitioner must establish that an asset used in a trade or business has a determinable useful life and prove the class of recovery *514 property to which it is assigned. See Potts, Davis & Co. v. Commissioner, 431 F. 2d 1222 (9th Cir. 1970), affg. a Memorandum Opinion of this Court. We therefore must examine the record to determine whether petitioner has established a determinable useful life for the Gittins painting. Respondent contends that the painting was a work of art rather than a mere wall decoration and therefore it did not have a determinable useful life; petitioner believes otherwise. The theory underlying respondent's position is articulated in Revenue Ruling 68-232, 1968-1 C.B. 79, which provides in its entirety as follows: A valuable and treasured art piece does not have a determinable useful life. While the actual physical condition of the property may influence the value placed on the object, it will not ordinarily limit or determine the useful life. Accordingly, depreciation of works of art generally is not allowable. A.R.R. 4530, C.B. II-2, 145 (1923), is superseded, since the position set forth therein is restated under current law in this Revenue Ruling. Respondent's *515 ruling, of course, does not constitute authority in this Court. Tandy Corp. v. Commissioner, 92 T.C. 1165, 1170 (1989). Petitioner advances several arguments to support her entitlement to the claimed deductions and investment tax credit. First, she argues that respondent has failed to establish that the painting was a valuable and treasured work of art, as opposed to a mere wall decoration which has a determinable useful life. She misunderstands the burden of proof. Respondent's determinations are presumptively correct. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). The issuance of the revenue ruling cited above in no way shifts the burden of proof. While we find it unnecessary to decide the correctness of respondent's contention that works of fine art are never depreciable, see Associated Obstetriciana and Gynecologists, P.C. v. Commissioner, T.C. Memo. 1983-380; Hawkins v. Commissioner, T.C. Memo. 1982-451, affd. 713 F. 2d 347 (8th Cir. 1983), the burden remains on petitioner to establish (1) *516 that the property in question has a determinable useful life and (2) the class of recovery property to which it is assigned. Petitioner contends that the portrait had a useful life of 5 years, the period of time in which she expected her skills and reputation to surpass those of Gittins. This contention is speculative and unconvincing. Petitioner alternatively posits that the portrait had a useful life based upon her life expectancy. This argument also lacks merit. In Coussement v. Commissioner, T.C. Memo. 1966-179, affd. 391 F. 2d 227 (6th Cir. 1968), the taxpayer argued that the useful life of a building which he had purchased was 20 years because, as a 57 year old man, he could be expected to live only 20 years from the date of acquisition. We rejected the "bizarre suggestion" that the owner's life expectancy should determine the depreciable useful life of an asset whose inherent value does not terminate upon the owner's death. Here, petitioners have failed to establish that the painting had a determinable useful life. Accordingly, it is not recovery property under section 168(c), and respondent's disallowance of petitioners' claimed ACRS *517 deductions for 1984 and 1985 is sustained. We next must decide whether petitioners are entitled to their claimed investment tax credit and section 179 expense deduction. Section 38 allows a tax credit for investments in section 38 property as defined in section 48(a). Under section 48(a), section 38 property is, in general, personal property that is recovery property under section 168 or for which depreciation is otherwise allowable under section 167(a). Section 179(a) allows an expense deduction for section 179 property in the year the property is placed in service. For 1984, the aggregate cost which may be deducted under section 179 is $ 5,000. Section 179(b) . Under section 179(d), section 179 property is recovery property which is section 38 property and which is acquired by purchase for use in a trade or business. To be eligible for the investment tax credit and the deduction provided for under section 179, an asset must be section 38 property. Having already found that the painting is not recovery property subject to depreciation, it follows that it is not section 38 property. *518 Accordingly, petitioners are not entitled to an investment tax credit or a deduction under section 179 with respect to the painting. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Associated Obstetricians and Gynecologists, P.C. v. Commissioner, T.C. Memo. 1983-380; Hawkins v. Commissioner, T.C. Memo. 1982-451, affd. 713 F.2d 347 (8th Cir. 1983); and Judge v. Commissioner, T.C. Memo. 1976-283↩.