Richard L. SIMON and Fiona Simon, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 1708, Docket 94–4237.

United States Court of Appeals, Second Circuit.

Argued June 13, 1995.

Decided Oct. 13, 1995.

Edward T. Perelmuter, Washington, DC (Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Richard Farber, Tax Division, Department of Justice, Washington, DC, of counsel), for Respondent–Appellant.

Marvin E. Frankel, New York City (Steven C. Todrys, Eugenia Yudanin, Arthur Pelikow, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, of counsel), for Petitioners–Appellees.

Before: OAKES, WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

This appeal from the Tax Court raises the question whether professional musicians may take a depreciation deduction for wear and tear on antique violin bows under the Accelerated Cost Recovery System ("ACRS") of the Economic Recovery Tax Act of 1981 ("ERTA"), Pub.L. No. 97–34, 95 Stat. 172, although the taxpayers cannot demonstrate that the bows have a "determinable useful life."

The parties agree that under the pre-ERTA Internal Revenue Code of 1954 and the Treasury Department regulations interpreting that Code, the bows would be considered depreciable property only if the taxpayers could demonstrate a determinable useful life. The issue here is to what extent, if any, the ACRS modified the determinable useful life requirement.

## BACKGROUND

The facts are essentially undisputed. Richard and Fiona Simon are highly skilled professional violinists. Richard Simon began to play and study the violin at the age of 7. He received a bachelor of music degree from the Manhattan School of Music in 1956 and subsequently pursued his master's degree in music at the Manhattan School of Music and Columbia University. In 1965, Mr. Simon joined the New York Philharmonic Orchestra ("Philharmonic") as a member of its first violin section. Since then, he has also been a soloist, chamber music player, and teacher. Mr. Simon was a full-time performer with the Philharmonic throughout the relevant tax year.

Fiona Simon has played and studied the violin since the age of 4. She studied at the Purcell School in London from 1963 to 1971 and at the Guildhall School of Music from 1971 to 1973. Ms. Simon joined the first violin section of the Philharmonic in 1985. She, too, has been a soloist, chamber music player, teacher, and free-lance performer. Ms. Simon was a full-time performer with the Philharmonic throughout the pertinent tax year.

The business property at issue consists of two violin bows ("the Tourte bows") made in the nineteenth century by Francois Tourte, a bowmaker renowned for technical improve-

ments in bow design. These bows were purchased by the Simons in 1985 and were in a largely unused condition at the time. The Tax Court found that "[o]ld violins played with old bows produce exceptional sounds that are superior to sounds produced by newer violins played with newer bows." *Simon v. Commissioner*, 103 T.C. 247, 250, 1994 WL 450480 (1994). The Tax Court also found that violin bows suffer wear and tear when used regularly by performing musicians. With use, a violin bow will eventually become "played out," producing an inferior sound. *Id.* at 252, 253, 1994 WL 450480. However, a "played out" Tourte bow retains value as a collector's item notwithstanding its diminished utility. The Simons' Tourte bows, for example, were appraised in 1990 at $45,000 and $35,000, even though they had physically deteriorated since their purchase by the Simons in 1985 for $30,000 and $21,500, respectively.

The Simons use the Tourte bows regularly in their trade. In 1989, the tax year in question, the Simons performed in four concerts per week as well as numerous rehearsals with the Philharmonic. *Id.* at 249, 1994 WL 450480. Their use of the Tourte bows during the tax year at issue subjected the bows to substantial wear and tear. *Id.* at 252, 1994 WL 450480. Believing that they were entitled to depreciate the bows under the ACRS, the Simons claimed depreciation deductions for the two bows on their 1989 Form 1040 in the amount of $6,300 and $4,515. The parties stipulated that these amounts represent the appropriate ACRS deductions if deductions are allowable.

The Tax Court agreed with the Simons and allowed the depreciation deductions. The Commissioner brought the present appeal.[1]

## DISCUSSION

This appeal turns on the interpretation of the ACRS provisions of I.R.C. § 168,[2] which provide a depreciation deduction for "recovery property" placed into service after 1980. Recovery property is defined by that section as "tangible property of a character subject to the allowance for depreciation" when "used in a trade or business, or ... held for the production of income." I.R.C. § 168(c)(1). The record establishes that the Simons' Tourte bows were tangible property placed in service after 1980 and used in the taxpayers' trade or business. The Commissioner contends, however, that the bows are not "property of a character subject to the allowance for depreciation."

The parties agree that Section 168's phrase "of a character subject to depreciation" must be interpreted in light of the I.R.C. § 167(a)[3] allowances for "exhaustion, wear and tear, and ... obsolescence." The Simons and the Tax Court maintain that, when read in conjunction with the plain language of Section 167, Section 168 requires only that the Tourte bows suffer wear and tear in the Simons' trade to qualify as "recovery property." *See* 103 T.C. at 260, 1994 WL 450480. The Commissioner, on the other hand, argues that because all property used

---

**1.** The Third Circuit has recently held for the taxpayers in a companion case raising the same issues presented here. *See Liddle v. Commissioner*, 65 F.3d 329 (3d Cir.1995), *aff'g* 103 T.C. 285, 1994 WL 450489 (1994).

**2.** For purposes of this appeal, we apply the Internal Revenue Code as it existed prior to the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085. The relevant portions of Section 168 read as follows:

(a) *Allowance of deduction.* There shall be allowed as a deduction for any taxable year the amount determined under this section with respect to recovery property.
....
(c) *Recovery Property.* For purposes of this title—
  (1) *Recovery property defined.* Except as provided in subsection (e), the term "recovery

property" means tangible property of a character subject to the allowance for depreciation—
  (A) used in a trade or business, or
  (B) held for the production of income.

**3.** The relevant portions of Section 167(a) read as follows:

(a) *General Rule.* There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
  (1) of property used in the trade or business, or
  (2) of property held for the production of income.
In the case of recovery property (within the meaning of section 168), the deduction allowable under section 168 shall be deemed to constitute the reasonable allowance provided by this section....

in a trade or business is necessarily subject to wear and tear, the Simons' construction of Section 168 would effectively render Section 168's phrase "of a character subject to the allowance for depreciation" superfluous, a result that Congress presumably could not have intended. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (It is a "settled rule that a statute must, if possible, be construed in such a fashion that every word has some operative effect."). Therefore, Section 168's requirement that the property be "of a character subject to the allowance for depreciation" must include an element beyond wear and tear, namely the "determinable useful life" requirement embodied in 26 C.F.R. § 1.167(a)–1, a Treasury regulation of pre-ERTA vintage.

We do not agree with the Commissioner's premise because some tangible assets used in business are not exhausted, do not suffer wear and tear, or become obsolete. For example, paintings that hang on the wall of a law firm merely to be looked at—to please connoisseur clients or to give the appearance of dignity to combative professionals—do not generally suffer wear or tear. More to the point, the Simons' Tourte bows were playable for a time precisely because they had been kept in a private collection and were relatively unused since their manufacture. Indeed, it appears that one had never been played at all. Had that collection been displayed at a for-profit museum, the museum could not have depreciated the bows under ERTA because, although the bows were being used in a trade or business, they were not subject to wear and tear. The Tourte bows are not unlike numerous kinds of museum pieces or collectors' items. The Commissioner's textual argument thus fails because there are tangible items not subject to wear and tear.

The Commissioner next argues that Congressional intent and the notion of depreciation itself require that Section 168's statutory language be supplemented by reading into the word "character" a requirement that tangible property have a demonstrable useful life. To address that issue, we must briefly examine the history of the depreciation allowance.

The tax laws have long permitted deductions for depreciation on certain income-producing assets used in a trade or business. *See, e.g.,* Act of Oct. 3, 1913, 38 Stat. 167; Revenue Act of 1918, 40 Stat. 1067; I.R.C. § 23(1) (1939); I.R.C. § 167(a) (1954). The original rationale for the depreciation deduction was to allow taxpayers to match accurately, for tax accounting purposes, the cost of an asset to the income stream that the asset produced. *See Massey Motors, Inc. v. United States,* 364 U.S. 92, 104, 80 S.Ct. 1411, 1418, 4 L.Ed.2d 1592 (1960) ("it is the primary purpose of depreciation accounting to further the integrity of periodic income statements by making a meaningful allocation of the cost entailed in the use … of the asset to the periods to which it contributes"). In its traditional incarnation, therefore, the pace of depreciation deductions was determined by the period of time that the asset would produce income in the taxpayer's business. As the Supreme Court noted in *Massey,* "Congress intended by the depreciation allowance not to make taxpayers a profit thereby, but merely to protect them from a loss.... Accuracy in accounting requires that correct tabulations, not artificial ones, be used." *Id.* at 101, 80 S.Ct. at 1416.

To implement this accurate tax accounting, the concept of a determinable useful life was necessary because, without such a determination, one could not calculate the proper annual allowance—"the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States v. Ludey,* 274 U.S. 295, 300–01, 47 S.Ct. 608, 610, 71 L.Ed. 1054 (1927). The regulation that the Commissioner now relies upon was promulgated under the 1954 Internal Revenue Code and reflects the rationale underlying the accounting scheme in effect just prior to ERTA. *See* Treas.Reg. § 1.167(a)–1 (1972); H.R.Rep. No. 1337, 83d Cong., 2d Sess. 22 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4046–47.

ERTA, however, altered the depreciation scheme for two reasons other than sound accounting practice that are not consistent with the Commissioner's argument. First, the ACRS introduced accelerated depreciation periods as a stimulus for economic

growth. *See* H.R.Conf.Rep. No. 215, 97th Cong., 1st Sess. 206 (1981), *reprinted in* 1981 U.S.C.C.A.N. 285, 296; S.Rep. No. 144, 97th Cong., 1st Sess. 47 (1981), *reprinted in* 1981 U.S.C.C.A.N. 105, 152. Under ACRS, the cost of an asset is recovered over a predetermined period unrelated to—and usually shorter than—the useful life of the asset. Moreover, the depreciation deductions do not assume consistent use throughout the asset's life, instead assigning inflated deductions to the earlier years of use. *See* I.R.C. § 168(b). Therefore, the purpose served by the determinable useful life requirement of the pre-ERTA scheme—allowing taxpayers to depreciate property over its actual use in the business—no longer exists under the ACRS.[4] *See generally Massey*, 364 U.S. 92, 80 S.Ct. 1411. Because the ACRS is different by design, there is no logic in the Commissioner's suggestion that depreciation practice under the old Section 167 calls for the imposition of a determinable useful life requirement after ERTA.

■ A second congressional purpose embodied in ERTA also militates against reading a determinable useful life prerequisite into Section 168. In addition to stimulating investment, Congress sought to simplify the depreciation rules by eliminating the need to adjudicate matters such as useful life and salvage value, which are inherently uncertain and result in unproductive disagreements between taxpayers and the Internal Revenue Service. S.Rep. No. 144 at 47. Indeed, the legislation specifically sought to "de-emphasize" the concept of useful life. *Id.* On this point, we agree with the Tax Court that:

4. We do acknowledge, as the Tax Court did, that the concept of useful life retains some utility under the ACRS for determining whether recovery property is 3–year or 5–year class property. 103 T.C. at 264, 1994 WL 450480. *See Clinger v. Commissioner*, 60 T.C.M. (CCH) 598, 1990 WL 124522 (1990). Insofar as the memorandum opinion in *Clinger* also embraces a threshold determinable useful life requirement, we decline to follow it.

5. We accept the Tax Court's finding that the bows have no "determinable useful life." That finding is based on the assumption that there is no distinction between the value of the bows to professional violinists and their value as antiques after they are no longer functional.

ERTA's abandonment of the concept of salvage value may be the rub that causes the Commissioner to take the position that the Tourte bows

[The Commissioner's] argument that a taxpayer must first prove the useful life of personal property before he or she may depreciate it over the 3–year or 5–year period would bring the Court back to pre-ERTA law and reintroduce the disagreements that the Congress intended to eliminate by its enactment of ERTA.

103 T.C. at 263, 1994 WL 450480. *See also Liddle*, 65 F.3d at 333–34.

We also cannot accept the Commissioner's suggestion that her proposed interpretation de-emphasizes useful life by requiring establishment of a demonstrable useful life for only a "narrow category" of property. Insofar as the Commissioner seeks to do this by singling out usable antiques and other business property likely to appreciate in real economic value, she relies on a concept that has nothing whatsoever to do with the useful life of the asset in the business. As the Supreme Court noted in *Massey*, "useful life is measured by the use in a taxpayer's business, not by the full abstract economic life of the asset in any business." *Massey*, 364 U.S. at 97, 80 S.Ct. at 1414. Nor, *a fortiori*, does the concept of useful life bear on the asset's eligibility under the ACRS. Indeed, the Commissioner's position that deductions for depreciation may not be taken for property that retains value after use in a business seems designed to avoid the consequences of ERTA's explicit rejection of "salvage value." *See Clinger v. Commissioner*, 60 T.C.M. (CCH) 598, 1990 WL 124522 (1990) (concept of salvage value has been eliminated under ERTA).[5]

have no determinable useful life and are not depreciable. If salvage value could be used to offset depreciation, the Commissioner could, without loss to the Treasury, concede that the bows could be used to play the violin for only so long and simply offset the depreciation deduction by their continued value as antiques. The bows had been sparingly used, or not used at all, before they were purchased by the Simons and, having been used extensively, now have much less value as business property while retaining substantial value as antiques. The Commissioner may thus lean upon the thin reed of a supposed continuing determinable useful life requirement because Congress's intent to do away with the concept of salvage value is indisputable. In doing so, however, she fails to distinguish between a useful life as property used in a particular business—playing the violin as a professional—and value as non-functioning antiques.

■ The Commissioner's strongest support for her claim that Congress intended to maintain Section 1.167(a)–1's determinable useful life requirement comes from the House Conference Report, which noted that

Under present law, assets used in a trade or business or for the production of income are depreciable if they are subject to wear and tear, decay or decline from natural causes or obsolescence. Assets that do not decline in value on a predictable basis or that do not have a determinable useful life, such as land, goodwill, and stock, are not depreciable.

H.R.Conf.Rep. No. 215 at 206, U.S.C.C.A.N. 1981, p. 296. The Simons unsuccessfully attempt to recharacterize this statement as an inartful catalogue of assets that are not subject to exhaustion, wear and tear, or obsolescence. The House report means what it says but gives us slight pause. In light of the overriding legislative intent to abandon the unnecessarily complicated rules on useful life, we cannot employ two sentences in a legislative report to trump statutory language and a clearly stated legislative purpose. Continued reliance on 26 C.F.R. § 1.167(a)–1 is in sharp conflict with the overall legislative history of ERTA, which definitively repudiates the scheme of complex depreciation rules, including "current regulations." S.Rep. No. 144 at 47. We are thus not persuaded by the Commissioner's call for us to interpret a statute that abrogates a current regulatory regime as in fact incorporating the details of that scheme. In particular, we reject the argument that we should retain regulatory provisions now divorced from their functional purpose.

■ When a coherent regulatory system has been repudiated by statute—as this one has—it is inappropriate to use a judicial shoehorn to retain an isolated element of the now-dismembered regulation. We thus hold that, for the purposes of the "recovery property" provisions of Section 168, "property subject to the allowance for depreciation" means property that is subject to exhaustion, wear and tear, or obsolescence.

Our decision does not conflict with that of the Ninth Circuit in *Browning v. Commissioner*, 890 F.2d 1084 (9th Cir.1989). In *Browning*, a taxpayer musician sought to claim depreciation deductions for three violins: a Ruggieri, a Stradivarius, and a Gabrielli. Browning claimed an ACRS deduction for only one of these violins, the Gabrielli. *Browning v. Commissioner*, 55 T.C.M. (CCH) 1232, 1988 WL 68119 (1988). Judge Hamblen's Tax Court memorandum noted Browning's Section 168 claim in the introduction but did not discuss that section or differentiate it from the pre-ERTA claims in any way. On review, the Ninth Circuit mentioned neither Section 168, ERTA, nor the ACRS. In addition, all citations to Section 167(a) and discussion in the Ninth Circuit opinion refer to the 1954 Code. Finally, the Ninth Circuit's discussion of the Gabrielli violin explicitly referred to its salvage value, a concept that was eliminated for recovery property under the ACRS. *See* I.R.C. § 168(f)(9). *Browning* was thus decided as a pre-ERTA case.[6]

We acknowledge that the result of our holding may give favorable treatment to past investment decisions that some regard as wasteful, such as a law firm's purchase of expensive antique desks, the cost of which could have been quickly depreciated under our current ruling. However, Congress wanted to stimulate investment in business property generally, and it is not our function to draw subjective lines between the wasteful and the productive. Moreover, courts should take care that the Commissioner's role as revenue maximizer does not vitiate Congress's intent to sacrifice revenue to generate economic activity. *See LeCroy Research Sys. Corp. v. Commissioner*, 751 F.2d 123, 128 (2d Cir.1984). If taxpayers cannot trust that such tax measures will be fully honored, some or all of the hoped-for activity will not occur. *Id.*

One should not exaggerate the extent to which our holding is a license to hoard and depreciate valuable property that a taxpayer

---

**6.** The Tax Court distinguished *Browning* on the grounds that, in contrast to the current case, the taxpayer presented no credible evidence that the violins were depreciable property. 103 T.C. at 265, 1994 WL 450480. While Judge Hamblen's Memorandum in the Tax Court did conclude

that, "[i]n fact, from the record, we have no definite answer as to how often the three antique violins were used, if ever," *Browning*, 55 T.C.M. (CCH) 1232, 1988 WL 68119, we need not rely on those grounds in the instant appeal.

expects to appreciate in real economic value.[7] The test is whether property will suffer exhaustion, wear and tear, or obsolescence in its use by a business. Even without a determinable useful life requirement, a business that displayed antique automobiles, for example, and kept them under near-ideal, humidity-controlled conditions, would still have difficulty demonstrating the requisite exhaustion, wear and tear, or obsolescence necessary to depreciate the automobiles as recovery property. *Cf. Harrah's Club v. United States,* 661 F.2d 203 (Ct.Cl.1981). Nor is valuable artwork purchased as office ornamentation apt to suffer anything more damaging than occasional criticism from the tutored or untutored, *cf. Associated Obstetricians & Gynecologists, P.C. v. Commissioner,* 762 F.2d 38 (6th Cir.1985), and it too would probably fail to qualify as recovery property. Indeed, even a noted artwork that serves as a day-to-day model for another artist's work cannot be depreciated as recovery property if it does not face exhaustion, wear and tear, or obsolescence in the pertinent business. *Cf. Clinger,* 60 T.C.M. (CCH) 598, 1990 WL 124522.

For the foregoing reasons, we affirm.

OAKES, Senior Circuit Judge, dissenting:

I cannot believe that Congress, in changing the depreciation deduction from the Asset Depreciation Range System ("ADRS") for recovery of assets placed in service after December 31, 1980, to the Accelerated Cost Recovery System ("ACRS") whereby the cost of an asset is recovered over a predetermined period shorter than the useful life of the asset or the period the asset is used to produce income, intended to abandon the concept underlying depreciation, namely, that to permit the deduction the property must have a useful life capable of being estimated. *See Harrah's Club v. U.S.,* 661 F.2d 203, 207 (Ct. of Cl.1981). I find no indication in either the changes of statutory language or the well-documented legislative history that Congress intended such a radical change as the majority of this panel, the Tax

Court majority, and the Third Circuit in *Liddle v. C.I.R.,* 65 F.3d 329 (3d Cir.1995), have held it did. Indeed, it seems to me that the statutory language and the legislative history—consistent with the dual congressional purpose of simplification and stimulating economic growth by permitting accelerated depreciation periods—retained the fundamental principle that, in order to depreciate, the asset involved must have a determinable useful life.

First, with respect to the statutory language, the question before us is whether antique violin bows constitute depreciable "recovery property" under section 168(c)(1) of the Internal Revenue Code effective during 1989, the year in issue. I.R.C. § 168(c)(1) defined "recovery property" by saying:

> except as provided in subsection (e) the term "recovery property" means *tangible property of a character subject to the allowance for depreciation*—(A) used in a trade or business, or (B) held for the production of income.

*Id.* (emphasis added). Moreover, section 168(c)(2) assigned "recovery property" into four classes or tiers, and defined "recovery property" (other than real property) as "section 1245 property." Section 1245(a)(3) defined "section 1245 property" as "any property which is or has been property of a character subject to the allowance for depreciation provided in section 167...." How section 168(c)(2), section 1245(a)(3), and section 167 could all be read out of the statute as they have been by the majority of this panel, the Tax Court majority, and the Third Circuit, seems to me incomprehensible. Needless to say, the cases are legion that under section 167, taxpayers must establish that the property being depreciated has a determinable useful life. *See Browning v. C.I.R.,* 890 F.2d 1084, 1086–87 (9th Cir.1989) (disallowing depreciation deductions for antique violins); *Associated Obstetricians and Gynecologists, P.C. v. C.I.R.,* 762 F.2d 38, 39–40 (6th Cir.

**7.** We note that our decision today is limited to "recovery property," a concept that was deleted from the statute in the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085. Moreover,

ACRS' depreciation deductions first became available in 1981. Therefore, this opinion applies only to property placed in service between January 1, 1981 and January 1, 1987.

1985) (disallowing depreciation deductions for art works on medical office walls); and *Hawkins v. C.I.R.*, 713 F.2d 347, 353–54 (8th Cir.1983) (disallowing investment tax credit for law office art works). *See generally* Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 23 A.01 (Clark Boardman Callaghan ed. 1995) (1942).

Under the majority's interpretation, however, the only criterion necessary to obtain a deduction under section 168(c) is that the property be subject to wear and tear. Thus, a car buff in the trade or business of buying, collecting, and selling antique automobiles, who drives his autos to auto shows may obtain a depreciation deduction, or the law office that buys fine Sheraton or Chippendale desks or chairs for office use can take a deduction, though in each case the auto or furniture is actually appreciating in value and has no determinable useful life.

As for legislative history, the majority candidly admits that House Conference Report 97–215, which states that "assets that do not decline in value on a predictable basis or that do not have a determinable useful life, such as land, goodwill, and stock, are not depreciable," "means what it says," *see* Maj.Op. at 46 (citing H.R.Conf.Rep. No. 215 at 206, U.S.C.C.A.N.1981, p. 296). The majority then adds that the Report "gives us slight pause." [1]

The majority of this court joins the Tax Court majority and the Third Circuit in holding that section 168(c)(1) applies to all tangible property that is subject to "wear and tear." I agree with the Commissioner that such an interpretation renders meaningless

the phrase in section 168(c)(1) "of a character subject to the allowance for depreciation," since all tangible property used in a trade of business is necessarily subject to wear and tear. *See* Commissioner's Rep.Br. at 3–4 (citing to *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("a statute must, if possible, be construed in such fashion that every word has some operative effect")). This point is confirmed by the General Explanation of the Economic Recovery Tax Act of 1981 which states that section 168 "does not change the determination under prior law as to whether property is depreciable or non-depreciable." Staff of Joint Comm. on Taxation, 97th Cong., 1st Sess. 77 (Comm.Print 1981).

Nor can reliance be placed, as it is by the majority, upon the fact that section 168(f)(9) changed prior law by removing "salvage value" from the depreciation calculus. The fact that Congress eliminated salvage value while simultaneously defining the term "recovery property" as "tangible property of a character subject to the allowance for depreciation," cannot support the conclusion that section 168 eliminated the threshold requirement that taxpayers establish a determinable useful life for their property. Had Congress intended otherwise, the statute simply would have defined "recovery property" as "tangible property used in a trade or business" rather than as "tangible property of a character subject to the allowance for depreciation," and not specified that the recovery property be "section 1245 property," which, as stated, refers us back to section 167.

Since, concededly, taxpayers Richard and Fiona Simon have not established that the bows in question have determinable useful

---

1. The majority, after first calling it the House Conference Report, then goes on to call it "the House Report." The majority then opposes "the House Report," which is a misnomer, to the Senate Report which the majority says "repudiates the scheme of complex depreciation rules, including 'current regulations.'" *See* Maj.Op. at 46 (citing S.Rep. No. 144 at 47). In fact, what the majority calls the House Report is the Joint Explanatory Statement of the Committee of Conference, and is "an explanation of the effect of the action agreed upon by the managers [on the part of the House and Senate at conference] and recommended in the accompanying report." *See* H.R.Conf.Rep. No. 215 at 195, *reprinted in* 1981 U.S.C.C.A.N. 285. The Conference Committee report surely "trumps" the Senate Report if the Senate Report did indeed "repudiate[ ]" the scheme of complex depreciation rules, including 'current regulations.'"

But my reading of the Senate Report is that it did not repudiate "current regulations" in the sense that the majority opinion would have us believe. The Senate Report only mentions "[c]urrent regulations" in a reference to the congressional purpose of simplification, which reads "Current regulations provide numerous elections and exceptions which taxpayers—especially, small businesses—find difficult to master and expensive to apply." S.Rep. No. 144 at 47, U.S.C.C.A.N.1981, p. 152. All that the Senate committee believed was that a "new capital cost recovery system should be structured which de-emphasizes the concept of useful life, minimizes the number of elections and exceptions, and so is easier to comply with and to administer." *Id.* De-emphasis, I submit, is quite different from destruction.

lives, the bows do not qualify for the depreciation deduction. It is a long way from the dual purpose of section 168 (to shorten the depreciation periods for property that would have been depreciable under section 167 in order to stimulate investment and to simplify the complex series of rules and regulations pertaining to useful lives by substituting a four-tier system of three-year, five-year, ten-year, and fifteen-year property), to abandonment of the underlying concept of depreciable property altogether. In my view, the decision of the Tax Court should be reversed and accordingly I hereby dissent.