109 T.C. No.19


UNITED STATES TAX COURT


DUKE ENERGY NATURAL GAS CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12720-96.                    Filed December 16, 1997.

P owns and operates various systems of
interconnected subterranean natural gas gathering
pipelines and related compression facilities (the
gathering systems). P argues that the modified
accelerated cost recovery system allows P to depreciate
the gathering systems over 7 years because P is a
producer of natural gas within the meaning of Class
13.2 of Rev. Proc. 87-56, 1987-2 C.B. 674. R argues
that P must depreciate the gathering systems over 15
years because P transports gas, which brings P within
Class 46.0 of Rev. Proc. 87-56, <u>supra</u>.
    <u>Held</u>: P transports, and does not produce, gas;
thus, P must depreciate the gathering systems over 15
years.

Thomas P. Marinis, Jr., Sarah A. Duckers, and Charles T. Fenn, for petitioner.

Emron M. Pratt, Jr. and Todd A. Ludeke, for respondent.

OPINION

LARO, Judge: The parties submitted this case to the Court without trial. See Rule 122. Petitioner petitioned the Court to redetermine respondent's determination of income tax deficiencies of $399,369 and $753,089 for its taxable years ended September 30, 1991, and September 30, 1992, respectively.

We must decide the cost recovery period of certain natural gas recovery systems under the modified accelerated cost recovery system (MACRS). Petitioner argues for a 7-year recovery period. Respondent argues for a 15-year recovery period. We hold for respondent. Unless otherwise noted, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. References to "asset class" are to the asset classes set forth in Rev. Proc. 87-56, 1987-2 C.B. 674.

## Background

All facts are stipulated. The stipulated facts and exhibits submitted therewith are incorporated herein by this reference. Petitioner is the common parent of an affiliated group of corporations which file consolidated Federal income tax returns.

Petitioner's principal place of business was in Denver, Colorado, when it petitioned the Court.

Petitioner's wholly owned subsidiary owns and operates the subject assets. These assets, which are depreciated under MACRS, consist of various systems of interconnected subterranean natural gas gathering pipelines and related compression facilities (the gathering systems). The main gathering systems are known as: (1) The Weld County system, which is located north of Denver, Colorado, (2) the Milfay/Keystone system, which is located in eastern Oklahoma, and (3) the Minden system, which is located in northern Louisiana and southern Arkansas.

The gathering systems' pipelines are laid out like a "spider web", with small diameter pipelines connecting a well to larger diameter pipelines that mainly deliver "raw" gas to a processing plant in or near the oil and gas fields served by the pipelines. Petitioner does not own an interest in the oil and gas wells that produce the gas collected by the gathering systems.

A gathering system may be owned or operated by a producer or by an independent gatherer like petitioner. In either case, the system serves the same function. Some of petitioner's systems were once owned by producers, and those systems continue to serve the same wells that they served before petitioner acquired them. Those systems continue to perform the same functions as they did before acquisition.

Generally, natural gas emerges from a well as a mixture of gas and liquids, and the gas is separated from the liquids by passing through a separator near the well or at a central gathering point. After separation, the gas continues to contain entrained natural gas liquids (NGL's) which interfere with domestic or commercial use of the gas as an energy source. A processing plant is needed to remove the NGL's from the gas and to condition the gas in order to produce processed (dry) gas. Approximately 81 percent of the gathering systems deliver raw gas directly to petitioner's processing plants or to processing plants owned by unrelated third parties. The other gathering systems dehydrate raw gas and deliver it directly to intrastate and interstate transmission pipelines without processing. Regardless of whether or not the gas is processed before delivery, title to the gas usually transfers to petitioner at the point where petitioner's gathering system connects with a producer's separation facilities. Title to the gas also passes to petitioner in some cases at a common field point where raw gas from two or more wells has been gathered.

The majority of the natural gas that flows through petitioner's systems is purchased by petitioner under long-term contracts with producers. Most of these contracts are "percentage of proceeds" contracts under which the parties thereto share revenues from sales of dry gas and NGL's that occur

- 5 -

after the gas and NGL's leave the processing plants.  A second type of contract is a "keep whole" contract that provides for the redelivery to the producer of a volume of dry gas; in this case, the producer receives 100 percent of the dry gas and petitioner receives 100 percent of the proceeds from the sale of the NGL's (and sometimes a processing fee).  A third type of contract is a "wellhead purchase" contract under which the producer receives a stated price for the gas that is delivered, and petitioner receives payment when the gas or NGL's are sold.

## Discussion

In a case of first impression in this Court, we must determine the appropriate class life over which petitioner may depreciate its gathering systems.  The issue is purely one of timing in that the parties agree that petitioner may depreciate the assets, but disagree over the period of time that the depreciation must be taken into account for Federal income tax purposes.  Respondent determined that petitioner must depreciate the assets over 15 years because the assets are within asset class 46.0, and respondent's primary position in this proceeding is the same.  Petitioner argues primarily for a 7-year recovery period, asserting that the assets are within asset class 13.2. Petitioner argues alternatively that the assets are either within asset class 49.23, or not within any class; either classification would let petitioner depreciate the assets over 7 years.

Respondent argues, alternatively, that, if the assets are not within asset class 46.0, they are within asset class 00.3. Asset class 00.3 provides for a 15-year recovery period.

We agree with respondent's primary position. The Code lets taxpayers deduct depreciation for the exhaustion, wear and tear, or obsolescence of property used in a trade or business. Sec. 167(a); see also Simon v. Commissioner, 103 T.C. 247 (1994), affd. 68 F.3d 41 (2d Cir. 1995). For tangible property, such a deduction is computed by reference to the applicable depreciation method, recovery period, and convention. Sec. 168(a). Under MACRS, which generally applies to tangible property placed in service after December 31, 1986, the recovery period depends on the asset's class life, sec. 168(e), which, for purposes of this case, is found by reference to Rev. Proc. 87-56, 1987-2 C.B. 674. See sec. 168(i); see also sec. 167(m)(before repeal). The classes at issue are as follows:

> Asset Class 00.3--Land Improvements: Includes improvements directly to or added to land, whether such improvements are section 1245 property or section 1250 property, provided such improvements are depreciable. Examples of such assets might include sidewalks, roads, canals, waterways, drainage facilities, sewers * * *. Does not include land improvements that are explicitly included in any other class * * *. * * *

> Asset Class 13.2--Exploration for and Production of Petroleum and Natural Gas Deposits: Includes assets used by petroleum and natural gas producers for drilling of wells and production of petroleum and natural gas, including gathering pipelines and related storage facilities. Also includes petroleum and natural gas offshore transportation facilities used by

producers and others consisting of platforms * * *, compression or pumping equipment, and gathering and transmission lines to the first onshore transshipment facility * * *. * * *

Asset Class 46.0--<u>Pipeline Transportation</u>: Includes assets used in the private, commercial, and contract carrying of petroleum, gas and other products by means of pipes and conveyors. The trunk lines and related storage facilities of integrated petroleum and natural gas producers are included in this class. * * *

Asset Class 49.23--<u>Natural Gas Production Plant</u>: [No description given].

Rev. Proc. 87-56, <u>supra</u>, 1987-2 C.B. at 677, 678, 684, 686. A 15-year recovery period is assigned to property within either asset class 46.0 or asset class 00.3. A 7-year recovery period is assigned to property within either asset class 13.2 or asset class 49.23. Sec. 168(c), (e)(1); see also Rev. Proc. 87-56, <u>supra</u>, 1987-2 C.B. at 677, 678, 684, 686. Property without a class life generally has a 7-year recovery period. Sec. 168(e)(3)(C).

Asset class 13.2 and asset class 46.0, when read together, refer to assets used in the process that starts with the drilling and removal from the ground of petroleum and natural gas (production) and ends with the transportation of the gas to its end use. The question, therefore, is whether petitioner's gathering systems produce or transport gas. We conclude that they transport gas. The gathering systems are primarily pipelines that are used by a nonproducer privately, commercially, and/or contractually to carry gas; they are not used by a

producer to drill wells or produce gas. See Williams & Meyers, Manual of Oil & Gas Terms, 866 (9th ed. 1994)("production of gas" means "bringing forth gas from the earth"); see also sec. 1.167(a)-11(b)(4)(iii)(b), Income Tax Regs. Given this conclusion, the gathering systems fall squarely within the language of asset class 46.0. Although asset class 13.2 includes "gathering pipelines and related storage facilities", those pipelines and facilities must be used by a producer to fall within that class.

Petitioner argues that its gathering systems are outside asset class 46.0 because they do not carry gas within the meaning of that class. According to petitioner, asset class 46.0 includes only pipelines that move natural gas from a production plant to an end user such as a distribution facility. Petitioner asserts that its gathering systems do not transport gas, but gather and/or process it. We disagree. We decline to conclude that a pipeline company is carrying gas within the meaning of asset class 46.0 when it pipes the gas from a production plant to an end user, but not when it pipes the gas from the well to the production plant. Although petitioner invites us to draw a distinction in this case, arguing that its pipelines are fundamentally different from the transmission systems of other nonproducers, we decline to do so. Any difference between petitioner's pipelines and the transmission pipelines of other

nonproducers is a mere distinction without a difference and does not merit a different result herein.  Nor do we find dispositive petitioner's reliance on the practice of the Federal Energy Regulatory Commission (FERC), with respect to gas transmission systems, on the one hand, and gas production and/or gathering facilities on the other.  We find no evidence that FERC's practice on this subject has been adopted by either the Congress or the Commissioner of Internal Revenue (the Commissioner) in their promulgation of the laws, rules, and regulations which make up our Federal income tax regime.

Petitioner argues that its gathering systems are included in asset class 13.2 because the systems are used by petroleum and natural gas producers to produce natural gas in that the systems are essential to the production and sale of gas in the market. We disagree with petitioner's conclusion.  The mere fact that the gathering systems may have helped producers produce and sell their gas in the market does not mean that the systems are exploration or production assets within the realm of asset class 13.2.  Nor is it dispositive here that some producers own their own gathering systems, which, in those cases, place the systems within asset class 13.2.  The critical fact is that petitioner's gathering systems are not used by producers to produce gas.  They are used primarily by a pipeline company to carry gas to a

production facility, which, as such, brings them within asset class 46.0.  See sec. 1.167(a)-11(b)(4)(iii)(b), Income Tax Regs.

Our conclusions herein are supported by our understanding of the evolution of asset class 13.2.  In Rev. Proc. 62-21, 1962-2 C.B. 418, the Commissioner began grouping assets into broad industry classes for depreciation purposes.  Group Three, Guideline Class 17(b), entitled "Exploration, Drilling and Production" states:  "Includes the exploration, drilling, maintenance and production activities of petroleum and natural gas producers.  Includes gathering pipelines and related storage facilities of such producers.  Excludes gathering pipelines and related storage facilities of pipeline companies."  Id. at 424. Under this description, petitioner's gathering systems clearly would not have been included in this class because the pipelines are owned by a pipeline company and not a producer.

Later, when the Commissioner prescribed the asset classes and guideline lives for purposes of the asset depreciation range system, the Commissioner carried forward a similar limitation. Rev. Proc. 71-25, 1971-2 C.B. 553, 556, provides that asset class 13.2 "Includes assets used for drilling of wells and production of petroleum and natural gas, including gathering pipelines and related storage facilities, when these are related activities undertaken by petroleum and natural gas producers."  After restating this description without change, see Rev. Proc. 72-10,

1972-1 C.B. 721, the Commissioner changed this language to read exactly as the first sentence of asset class 13.2 reads today. See Rev. Proc. 77-10, 1977-1 C.B. 548. In making the latest change, the Commissioner noted explicitly that the change was "not intended to modify the composition of the existing classes of Rev. Proc. 72-10." Sec. 1.04 of Rev. Proc. 77-10, supra at 548.

We conclude that the gathering systems are included in asset class 46.0, and we so hold. In so holding, we have considered the recent opinion of the U.S. District Court for the District of Wyoming, which reaches a contrary holding in a setting that is similar to the one at hand. See True v. United States, No. 96-CV-1050-J (D. Wyo. Nov. 3, 1997)(order granting motion for partial summary judgment). Although we agree with the District Court that the classification of assets for depreciation purposes rests on each asset's primary use, we do not agree that pipeline companies such as petitioner use gathering lines primarily to produce petroleum. The District Court did not consider the evolution of the language in asset class 13.2, which we find to be most helpful to our inquiry. The court also did not consider the industry definition of the word "production".

We have carefully considered all arguments made by petitioner for a contrary holding and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.