T.C. Memo. 1997-64

UNITED STATES TAX COURT

ASTRIDA TERAUDS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10433-95. Filed February 4, 1997.

Astrida Terauds, pro se.

Gary W. Bornholdt, for respondent.

MEMORANDUM OPINION

DAWSON, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(4)[1] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge: Respondent determined Federal income tax deficiencies of $10,703 and $7,954 and additions to tax under section 6651(a)(1) of $2,675 and $2,815, respectively, for petitioner's 1986 and 1987 tax years.[2]

After concessions, the issues for decision are: (1) Whether petitioner is entitled to a dependency exemption under section 151(a) for her daughter Sandra for the year 1987; (2) whether petitioner, for the year 1986, realized a long-term capital gain in an amount less than that determined by respondent; (3) whether petitioner, for the year 1986, is entitled to a deduction for

[2] Petitioner elected to have this case considered as a Small Tax Case under sec. 7463 even though the deficiencies in tax and additions to tax for both years exceed $10,000. Sec. 7463 limits the jurisdiction of this Court to consider a case under sec. 7463 to one in which neither the amount of deficiency placed in dispute (including additions to tax) nor the amount of any claimed overpayment exceeds $10,000 for any one taxable year. Petitioner placed in dispute "approximately" $6,000 and $2,000 of the deficiencies for 1986 and 1987 based upon her concession of the following adjustments in the notice of deficiency: Unreported dividend income of $8,872 and $8,784, respectively, for 1986 and 1987, and unreported interest income of $13,412 and $16,218, respectively, for 1986 and 1987. As a result of these concessions, the deficiencies and additions to tax for each year are well under $10,000. However, petitioner alleged in her petition a claim for a credit or refund of an overpayment of taxes but did not allege the amount of the overpayment. After the case was heard and was taken under advisement, it became apparent that the amount of a claimed overpayment would exceed $10,000, at least for one of the years at issue. Therefore the Court, pursuant to Rule 173, ordered that consideration of this case under sec. 7463 be discontinued and that the case be considered under sec. 7443A(b)(4).

expenses under section 212, relating to rental property, which was not allowed by respondent; (4) whether petitioner, for the year 1987, is entitled to apply, as partial payment of the tax shown as due and owing on her return, the amount of $2,899.89 held by respondent for her account, which was received by respondent pursuant to a levy, and whether petitioner is entitled to an additional credit for the proceeds of a separate levy that is not shown on respondent's transcript of account; (5) whether petitioner is entitled to credits or refunds for overpayments of her 1986 and 1987 taxes; and (6) whether petitioner is liable for the additions to tax under section 6651(a)(1) for 1986 and 1987.[3]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was Long Beach, New York.

During the years at issue, petitioner was a systems engineer for the Sperry Rand Corp. Her 1986 Federal income tax return was filed on April 15, 1992, and her 1987 return was filed on March 4, 1992.

Because there are several issues involved in this case, we have combined our findings of fact and opinion with respect to

---

[3] For 1986, respondent disallowed itemized deductions of $3,011, consisting of mortgage interest and property taxes. These disallowed amounts were allowed as deductions for rental expenses. Petitioner does not challenge the characterization of these items as rental expenses.

each issue. The determinations of the Commissioner in the notice of deficiency are presumed correct, and the burden is on the taxpayer to show that they are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Additionally, deductions are a matter of legislative grace, and the taxpayer must satisfy the specific statutory requirements for any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1. Claimed Dependency Exemption Deduction

The first issue is petitioner's claim to a dependency exemption deduction for her daughter Sandra for 1987. Petitioner claimed Sandra as a dependent on her 1986 and 1987 returns; however, respondent disallowed the exemption for 1987. The reason stated for the disallowance is that petitioner did not establish that she had provided more than one-half of Sandra's support during 1987.

Section 151(c)(1) generally allows as a deduction an exemption for each dependent of a taxpayer as defined in section 152. Section 152(a) provides, in general, that the term "dependent" means certain individuals over half of whose support was received from the taxpayer during the taxable year in which such individuals are claimed as dependents. Eligible individuals who may be claimed as dependents include, among others, a son or daughter of the taxpayer. Sec. 152(a)(1). Section 151(c)(1) further provides that, if the claimed dependent is a child of the

taxpayer claiming the exemption, the child must not have attained the age of 19 at the close of the calendar year or must be a student. Sec. 151(c)(1)(B).

During 1987, Sandra had not attained the age of 19 at the close of the year. However, she had a part-time job at a supermarket during 1987. Based on petitioner's testimony at trial, Sandra's gross income from this job was "over $1,900" during 1987.

Petitioner presented no evidence to establish the total support provided to Sandra during 1987, and that, of the total support provided, more than one-half of such amount was provided by petitioner. See Blanco v. Commissioner, 56 T.C. 512, 514 (1971). Although petitioner provided Sandra with a place of abode, food, and perhaps some clothing, the record shows, based on petitioner's testimony, that Sandra had other means of support during 1987 in addition to the earnings from her part-time job and petitioner's support. Sandra's father provided her $100 per week during 1987. On this record, petitioner has not established that she provided more than half of Sandra's total support during 1987. Respondent, therefore, is sustained on this issue.[4]

---

[4] Petitioner offered no testimony as to her relationship with Sandra's father, and, in particular, whether she and Sandra's father were married to each other; whether they were divorced or legally separated and, if so, the date thereof, and who was the custodial parent; and whether there were any agreements or court decrees regarding which parent was entitled to the dependency (continued...)

2. Long-Term Capital Gain

The second issue is whether long-term capital gain realized by petitioner in 1986 is less than the amount determined by respondent. On her 1986 Federal income tax return, petitioner did not report any gain or loss from the sale of capital assets.[5] During the examination of petitioner's 1986 tax year, respondent determined, based upon information furnished by payers, that petitioner sold stock during 1986 totaling $82,529 as follows:

| | |
|---|---|
| RCA Corp. | $ 6,650 |
| Financial Clearing & Services | 7,010 |
| Financial Clearing & Services | 1,377 |
| Burroughs | 17,136 |
| Harris Trust Co. | 10,710 |
| Harris Trust Co. | 14,917 |
| Duke Power Co. | 2,575 |
| Merrill Lynch | 2,569 |
| Merrill Lynch | 257 |
| Merrill Lynch | 7,063 |
| Polaroid Corp. | 25 |
| Burroughs | 12,240 |
| Total | $82,529 |

In the examination of her 1986 tax year, petitioner provided information to respondent's auditing agent that showed that she had a basis of $65,071 in the stock listed above. Respondent's agent accepted this amount as petitioner's basis and, accordingly, determined that petitioner realized a long-term

[4](...continued)
exemption. See sec. 152(e).

[5] Petitioner's 1986 return did not include a Schedule D, Capital Gains and Losses.

capital gain of $17,458 from the sales of these stocks. After allowing the 60-percent capital gain deduction under section 1202, petitioner's net long-term capital gain was determined to be $6,983, which is the amount set forth in the notice of deficiency.

At trial, petitioner acknowledged sales or exchanges involving the stocks listed above. However, petitioner presented conflicting positions as to why the $17,458 gain determined by respondent was not correct. One of her positions is that, while the transactions for all the stocks listed above totaled $82,529, she did not receive cash for that amount, and that a portion of the consideration received was stock she received in connection with a corporate merger. With respect to the stock she received, petitioner contends that no gain or loss was realized; therefore, the exchange of such stock was not a taxable event and should not be considered as part of the $82,529 determined by respondent to have been the amount realized from sales of stock.[6] Petitioner presented no documentation to establish that there was a merger, that the amounts reported by payers to the Internal Revenue Service represented stock that was issued to petitioner in exchange for other stock as the result of a merger, or that there

---

[6] If this contention is correct, petitioner's basis for such stock should also be deducted from the $65,071 basis determined by respondent. This was not addressed by petitioner in her testimony.

was no taxable event as to such stock. Another contention by petitioner is that, of the amounts listed above, two of the stock sales listed, Harris Trust Co. in the amounts of $10,710 and $14,917, were incorrect and should have been, respectively, $4,310 and $5,967. Petitioner presented to the Court a Form 1099 from the Harris Trust Co. of New York that reflected a cash payment to petitioner of $5,967.50 during 1986; however, petitioner failed to prove that this Form 1099 related to any of the Harris Trust Co. transactions listed above. The Form 1099 for $5,967.50 presented by petitioner did not indicate that it was a corrected or amended Form 1099. Petitioner's position is not only vague but contradictory because, in support of her first argument, she acknowledged that the transactions at issue involving stock totaled $82,529 during 1986. To argue that two of the amounts making up the $82,529 are incorrect is simply contradictory to her acknowledgment that her stock transactions that year amounted to $82,529. On this record, petitioner has not satisfied her burden of proving that respondent's determination of her long-term capital gains for 1986 is incorrect. Respondent, therefore, is sustained on this issue.

3. <u>Claimed Deduction for Expenses Relating to Rental Property</u>

The third issue is whether petitioner is entitled to a deduction for expenses incurred in connection with rental property during 1986 that was not allowed by respondent. In the

notice of deficiency, respondent allowed petitioner a $775 loss from her rental activity for 1986.

During 1986, petitioner owned what she described as a "two-family" house. She lived in one portion of the house and rented the other portion. On her 1986 Federal income tax return, petitioner did not report either the rental income or the expenses incurred in connection with the rental portion of her house. She testified that, because her expenses were more or less equal to or in excess of her rental income, she chose not to report the activity. In the course of the audit of her returns for 1986 and 1987, petitioner made known the activity to respondent's auditing agent, and a determination was made with respect to the activity for 1986.[7] In the notice of deficiency, the net loss of $775 allowed by respondent was determined as follows:

| | | |
|---|---|---|
| Rental income | | $3,136.00 |
| Expenses (for entire house) | | |
| Mortgage interest | $2,087.01 | |
| Real estate taxes | 3,934.21 | |
| Insurance | 300.00 | |
| Utilities | 1,500.00 | |
| Total | $7,821.22 | |
| Attributable to rented portion (½) | | 3,910.61 |
| (Loss) | | ($ 774.61) |

[7] The rental activity issue is only for the year 1986. Petitioner did not report a rental activity on her 1987 return, and no mention was made at trial of such an activity during 1987. The Court presumes that petitioner did not conduct such an activity during 1987.

At trial, petitioner did not dispute the amounts shown above. She claimed that she should be allowed additional expense deductions of $1,000 for depreciation for that portion of the house that was rented, repairs, and expenses she incurred in evicting the tenant.

In the case of an individual, section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year with respect to property held for the production or collection of income and expenses for the management, conservation, or maintenance of property held for the production of income. Section 167(a)(2) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property held for the production of income. Depreciation is designed to allow the taxpayer to secure a return for the cost of the property. United States v. Ludey, 274 U.S. 295, 300-301 (1927); Simon v. Commissioner, 103 T.C. 247, 253 (1994), affd. 68 F.3d 41 (2d Cir. 1995). Generally, the annual depreciation amount is a fraction or percentage of the depreciable basis of the property computed in accordance with the method of depreciation used. Sec. 167(c)(1).

Petitioner presented no evidence to establish the amounts spent for repair of her rental property; she did not describe the nature of the repairs and presented no receipts or other documentary evidence to corroborate her testimony. Likewise,

petitioner presented no evidence regarding the proceedings she undertook to evict the tenant from her rental property or receipts or canceled checks to show what amounts were paid to effect the eviction. With respect to the claimed depreciation, petitioner presented no evidence to establish her ownership of the house, the cost of the property and an allocation of that cost between the land and the building, the useful life of the property, and the amounts of depreciation claimed on the property for prior years.

When a taxpayer has insufficient records to substantiate claimed deductions, this Court is permitted to estimate expenses where the Court is convinced from the record that the taxpayer has incurred such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). However, to allow a deduction under the "Cohan rule", there must be some evidence in the record to support the Court's estimation of the amount that was actually spent or incurred for the purpose claimed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). There is insufficient evidence in this record upon which the Court can make an estimate of the claimed expenses or depreciation. Therefore, we reject petitioner's claim for additional expenses in excess of those allowed by respondent with respect to her rental activity during 1986.

4. Claimed Credits for Amounts Received by Respondent Pursuant to Levies

The fourth issue is whether petitioner is entitled to direct the payment of a portion of the tax shown on her 1987 return by the application of levied funds held by respondent for petitioner's account. In addition, petitioner claims further credit for an additional levy by respondent that is not reflected on respondent's transcript of petitioner's account.

The Federal income tax return filed by petitioner for 1987 showed a tax of $4,379. As shown on the return, petitioner paid that tax in the following manner:

| | |
|---|---|
| Federal income taxes withheld | $1,055.97 |
| Levy on bank account | 2,899.89 |
| | $3,955.86 |
| Amount paid with return | 423.14 |
| Total | $4,379.00 |

Petitioner's return included a footnote referencing the levy shown above as follows: "Dime Bank ($901.11) and Crossland Savings ($2,899.89)".

In the notice of deficiency, respondent made the following adjustments to the payment amounts shown above, with the following explanation:

Adjustment: FEDERAL WITHHOLDING

1987

| | |
|---|---|
| PER RETURN: | + 3,957[1] |
| CORRECTED: | + 1,073 |
| ADJUSTMENT: | + 2,884 |

Explanation
Your withholding credit(s) was/were adjusted to reflect amount(s) shown on your Form(s) W-2.

1 Respondent rounded off this amount to $3,957; however, since the prepayments claimed by petitioner totaled $3,955.86, the correct rounded off figure should be $3,956. It follows that the adjustment should be $2,883 instead of $2,884.

At trial, respondent's examining agent testified that the above table reflected two adjustments in the prepayments claimed by petitioner on her return: (1) Respondent increased petitioner's withheld taxes from $1,055.97 claimed on her return to $1,073 to reflect an additional $17 in taxes withheld on petitioner's dividend and interest income that she had not claimed on her return, and (2) the $2,899.89 levy that was claimed by petitioner on her return as a payment was not allowed. Because of these adjustments, $2,884 of the prepayments claimed by petitioner was disallowed. The agent further testified that, subsequent to the filing of petitioner's 1987 return, respondent applied the $2,899.89 to payment of an unpaid 1989 tax assessment against petitioner.

Petitioner contends that the $2,899.89 should be applied toward her 1987 tax liability, as she directed on her 1987 return, and that the 1987 deficiency should be reduced accordingly. Petitioner also claims that the $2,884 disallowed payment in the notice of deficiency represents another levy by respondent on another of her bank accounts, and that this $2,884 levy should also be applied to her 1987 tax liability or otherwise credited or refunded to her.

The background on this issue is somewhat unusual. Petitioner and her daughter Sandra held joint title to the corporate stock addressed earlier in this opinion in connection with the capital gain issue. Petitioner and Sandra also held joint title to several interest-bearing accounts in several banks as well as certificates of deposit. For each of these accounts and securities, the reports to the Internal Revenue Service (IRS) by the payers of interest and dividends, as well as the reports of the gross sales proceeds on the sales of corporate stocks during 1986, listed Sandra as the recipient or payee of the reported amounts. However, for the years 1985, 1986, and 1987, Sandra did not report any of these amounts on her Federal income tax returns. Notices of deficiency were issued to Sandra for these 3 years with respect to the unreported amounts. Sandra did not pay the deficiencies determined in the notices of deficiency and took no action to challenge the determinations of respondent in these notices of deficiency. Accordingly, Sandra was assessed for deficiencies in tax in accordance with the amounts determined in the notices of deficiency.[8] Pursuant to these assessments, the IRS levied on several of the bank accounts that were in the joint names of Sandra and petitioner. Sizeable amounts of money

---

[8] The notices of deficiency to Sandra and the assessments against her were not introduced into evidence. These factual assertions are based solely on statements to the Court by counsel for respondent, which the Court construes as factual admissions for purposes of this case.

were turned over to the IRS as a result of these levies. At trial, respondent produced IRS transcripts that reflected the following amounts realized from these levies:

For the 1986 tax year:

| Amount | Date |
|---|---|
| $ 661.05 | Sept. 28, 1992 |
| 918.29 | Sept. 14, 1993 |
| 3,084.23 | Sept. 17, 1993 |
| 54,532.26 | July 17, 1991 |
| $59,195.83 | Total levies for 1986 tax year |

For the 1987 tax year:

| Amount | Date |
|---|---|
| $3,823.00 | Sept. 17, 1993 |

The Federal income tax returns of petitioner for 1986 and 1987, respectively, were received and filed by the IRS on April 16, 1992, and March 4, 1992. Petitioner did not report either the capital gain realized on the stock sales during 1986 nor any of the interest and dividends received on the stock, bank accounts, and certificates of deposit that were jointly in her and Sandra's names. However, sometime after filing her 1986 and 1987 returns (and presumably feeling the sting of the sizeable levies by respondent), petitioner came forward and made known to the IRS that she and not Sandra owned the stock sold during 1986, and that petitioner also owned all of the various bank accounts and certificates of deposit that were titled jointly with Sandra. In the resulting audit of petitioner's 1986 and 1987 tax years, respondent determined the gain realized from the stock sales and

the interest and dividends received on the bank accounts and stock was in fact petitioner's income and was not Sandra's income. As shown earlier, petitioner conceded these determinations in this case and challenged only the amount of capital gain realized on the 1986 stock sales.

Although respondent accepted the fact that all of the gains and income previously attributed to Sandra were attributable to petitioner, it does not appear that the IRS abated the assessments against Sandra. Moreover, respondent never released any of the moneys realized from the various levies. At trial, counsel for respondent acknowledged that the amounts levied continued to be held by the IRS but were held for the account of petitioner rather than Sandra. Counsel for respondent acknowledged that, if the Court should decide all issues in this case in favor of respondent, the amounts held by respondent for the account of petitioner will far exceed the deficiencies in tax, additions to tax, and interest.[9] Until the deficiencies and additions to tax in this case become final, respondent agrees

---

[9] Counsel for respondent did not advise the Court as to the legal basis for the levy of property based on an assessment against a taxpayer respondent acknowledges does not owe the tax but retains possession of such property for the account of another taxpayer (petitioner herein) against whom there is no assessment. There is no indication in the record that the assessment against Sandra was abated as authorized under sec. 6404, nor is there any indication in the record that petitioner instituted an action against the IRS under sec. 7426 for the return of wrongfully levied property.

that petitioner cannot be assessed and the levied funds cannot be applied to satisfy the assessments. Moreover, petitioner has not executed any consent to an assessment and collection of the amounts determined by respondent in the notice of deficiency for 1986 and 1987.

As noted earlier, when petitioner filed her 1987 return, she directed on the return that part of the $4,397 tax due should be paid by application of $2,899.89 that respondent realized from a levy on Crossland Savings, a bank or financial institution that held an account for petitioner. Respondent did not allow the $2,899.89 as a payment of petitioner's 1987 tax liability, and, on September 17, 1993, that amount was transferred by the IRS out of petitioner's 1987 account and applied toward payment of a 1989 tax assessment against petitioner. Petitioner contends that the $2,899.89 constituted a payment of part of her 1987 tax, and the deficiency determined by respondent is overstated by that amount.

The liability for payment of a tax (or the right to enforce collection thereof by respondent) arises when the tax is assessed pursuant to sections 6201 through 6210. At the time petitioner filed her 1987 income tax return, respondent was holding sizeable amounts of moneys for petitioner's account, which respondent had obtained previously through several levies.

No reasons were stated in the notice of deficiency as to why the $2,899.89 did not constitute a payment of the 1987 tax shown

on the return filed by petitioner, nor were any reasons stated by respondent at trial to explain the action taken in disallowing the $2,899.89 as a payment of the 1987 tax and subsequently applying this amount to a 1989 tax liability of petitioner.

Section 6151(a) provides generally that, when a return of tax is required, the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed and shall pay such tax at the time and place fixed for filing the return. Section 6342(a) provides generally that any money realized pursuant to a levy or sale of seized property shall be applied first against the expenses of the levy and sale, second against any taxes owing on the property seized and sold, third against the liability of the delinquent taxpayer in respect of which the levy was made or the sale conducted. Section 6342(b) provides that any surplus shall, upon application and satisfactory proof thereof, be credited or refunded by the Secretary to the taxpayer or persons legally entitled thereto. Section 301.6342-1(b), Proced. & Admin. Regs., provides that the delinquent taxpayer is the person entitled to the surplus proceeds unless another person establishes a superior claim thereto.

Thus, when petitioner filed an income tax return for 1987 that showed a tax due and owing of $4,379, she was required by

law to pay that tax on the date the return was filed. That tax was paid, as shown on the return, by taxes withheld, a cash payment petitioner submitted with the return, and the amount of $2,899.89 to be taken from proceeds of a levy that petitioner identified on her return. At the time petitioner's 1987 return was filed, there were no other outstanding assessments against her as to which respondent could have applied the amount at issue. In view of these facts and circumstances, we conclude that respondent should have applied the $2,899.89 levy proceeds identified on the return toward payment of the tax shown on that return filed by petitioner. Respondent has given no factual reason and no legal basis for disallowing this amount as a payment and later applying such amount toward payment of a subsequently assessed tax liability. Petitioner is sustained on this issue.

As to the second part of this issue, petitioner contended that the $2,884 disallowed as a payment by respondent in the notice of deficiency represented the proceeds of another levy on a different bank account, and that the $2,884 should be allowed to her as an additional credit. Petitioner failed to establish that there was such a levy. Respondent's transcript did not reflect that such proceeds were realized through levy, other than the amounts listed earlier in this opinion. Petitioner presented no evidence from the bank or savings institution from which she

claims this levy was made showing that amounts were remitted by such bank or institution to respondent. The Court, therefore, rejects petitioner's contention that she is entitled to an additional credit of $2,884 for 1987.

5. Claimed Credits or Refunds of Overpayments

The fifth issue is whether petitioner is entitled to credits or refunds for overpayments of her 1986 and 1987 taxes. In her petition, petitioner alleged "I should get a refund. Exact amount unknown as depends on many variables."

This Court has jurisdiction to determine whether a taxpayer has made an overpayment of taxes where a notice of deficiency has been issued, and a timely petition is filed with this Court. Section 6512(b)(1) provides, in part:

> if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, * * * or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

In this case respondent acknowledged at trial that moneys were levied and held by respondent for petitioner's account that will exceed the deficiencies, additions to tax, and interest determined against petitioner. The moneys held by respondent, however, came to respondent by way of levy and not by voluntary payments from petitioner or withholdings of third parties. The question before us is whether these levied funds constitute a

"payment". In Fortugno v. Commissioner, 41 T.C. 316 (1963), affd. 353 F.2d 429 (3d Cir. 1965), this Court held that no overpayment exists with respect to a particular fund until all or a part of that fund has been assessed, or until the taxpayer acquiesces in the proposed deficiency or a part thereof, and the deposited fund is allocated by respondent to payment of the agreed deficiencies. In the Fortugno case the taxpayers had deposited $1 million with the IRS in order to forestall a jeopardy assessment against them. At the time the deposit was made, the IRS had made no determination of any deficiencies against the taxpayers; the taxpayers never requested an assessment and never intended by their $1 million payment to waive their right to contest the correctness of any determination of deficiencies by the IRS. This Court held that, in order for the taxpayers' remittances to constitute a payment of tax, the remittances had to be made with the intention of satisfying an "asserted tax liability". Fortugno v. Commissioner, supra at 322. We concluded that the taxpayers did not make remittances to the IRS to satisfy an "asserted tax" liability, and, therefore, the remittances constituted a deposit rather than the payment of a tax.

Here, other than the $2,899.89 directed by petitioner to be applied against her 1987 tax, petitioner made no payments to respondent. The amounts in question were levied pursuant to an

assessment against another taxpayer. When respondent acknowledged that no tax was due by the assessed taxpayer, rather than releasing the levied funds, respondent retained the funds for petitioner's account. The facts demonstrate that there was no "asserted tax" liability against petitioner at the time respondent decided the levied funds would be held for petitioner's account. Petitioner never agreed to an assessment nor to a tax liability. The Court concludes, therefore, that respondent's levy of funds pursuant to an assessment against another taxpayer, but held by respondent for the account of a taxpayer who has not been assessed, does not constitute a "payment" of an asserted tax liability by the taxpayer who has not been assessed. Consequently, petitioner has not made a "payment" of taxes with respect to the levied amounts held by respondent for petitioner's account. Thus we hold that there were no overpayments for the years in issue. This does not mean, however, that petitioner is not entitled to a return of the amount by which the levied funds will exceed petitioner's tax liabilities after the decision in this case becomes final, and the amounts due and owing by petitioner are assessed and satisfied by application of the levied funds in respondent's possession. Under section 6342 and the regulations thereunder, any surplus proceeds shall, upon application and satisfactory proof thereof, be credited or refunded to the person legally

entitled thereto. Petitioner's recourse is to proceed under section 6342.

6. Section 6651(a)(1) Additions to Tax

The final issue is whether petitioner is liable for the additions to tax under section 6651(a)(1) for 1986 and 1987.

The addition to tax under section 6651(a)(1) is imposed where there is a failure to timely file a tax return, unless it is shown that the failure to timely file is due to reasonable cause and not due to willful neglect. The taxpayer bears the burden of proving that the Commissioner's determination is in error. Funk v. Commissioner, 687 F.2d 264, 266 (8th Cir. 1982), affg. T.C. Memo. 1981-506; Ehrlich v. Commissioner, 31 T.C. 536, 540 (1958).

Petitioner's returns for 1986 and 1987 were not timely filed. Her position is that she could not decide whether she would report the income attributable to the stocks and interest-bearing accounts that were titled jointly in the names of petitioner and Sandra and, for that reason, did not file her 1986 and 1987 returns until 1992. However, petitioner had salary and wage income in each of these years as to which returns should have been filed. Whatever doubts petitioner had with respect to income attributable to property that was titled jointly with Sandra was not a reasonable cause for her failure to timely file the 1986 and 1987 returns. Thus, we hold that her failure to

timely file the returns was not due to reasonable cause, but to willful neglect.

The addition to tax under section 6651(a)(1) is 5 percent of the "amount required to be shown as tax on * * * [the] return". Section 6651(b)(1) provides that, for purposes of computing the addition to tax, "the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax." The Court has concluded that the levied amounts held by respondent for petitioner's account did not constitute a payment of tax. Also, with respect to the $2,899.89 that the Court has held constituted a payment of petitioner's 1987 tax liability, that payment does not allow for a reduction of the section 6651(a)(1) addition to tax because it was not made on or before the date prescribed for payment of the tax; i.e., on or before April 15, 1988. Therefore, we sustain respondent's determination as to the section 6651(a)(1) additions to tax for 1986 and 1987.

To reflect concessions and our disposition of the disputed issues,

Decision will be entered under Rule 155.